**In re Moeiz YADIDI, Debtor.**

**Moeiz Yadidi, Appellant,**

v.

**Linda Herzlich, Appellee.**

BAP No. CC–01–1106–KMoB.

Bankruptcy No. LA 00–12727 TD.

Adversary No. LA 00–10744 TD.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 19, 2001.

Filed Feb. 26, 2002.

---

Kianoosh Massiri, Van Nuys, CA, for Moeiz Yadidi.

Allen Herzlich, Encino, CA, for Linda Herzlich.

Before KLEIN, MONTALI and BRANDT, Bankruptcy Judges.

### *OPINION*

KLEIN, Bankruptcy Judge.

Following trial on an objection to discharge, the court sua sponte denied discharge under 11 U.S.C. § 105 instead of ruling on what it deemed a deficient complaint under 11 U.S.C. § 727. We VACATE the order denying discharge as neither a necessary nor an appropriate application of § 105 and REMAND for findings on the § 727 issues, noting that Federal Rule of Civil Procedure 15(b) applies to fill the factual gaps in the complaint.

### FACTS

The debtor, Moeiz Yadidi, filed this chapter 7 bankruptcy case on January 28, 2000, shortly before his scheduled deposition in a state court fraudulent transfer action being prosecuted by Linda Herzlich, a judgment creditor.

Herzlich filed a complaint objecting to discharge, naming §§ 727(a)(2), 727(a)(3), and § 727(a)(4)(A) in the allegations and in the demand for judgment.

The complaint's allegations consisted mainly of quotations of the pertinent subsections of § 727, with some sparse factual allegations that Yadidi transferred property, including assets of a garment business, for less than reasonable value. However, the § 727(a)(2) fraudulent transfer theory to which these factual allegations related was not pursued at trial.

The sole allegation of failure to maintain records parroted § 727(a)(3): "that, on information and belief, the Debtor has destroyed, mutilated, falsified, concealed or failed to keep or preserve books of accounts or records, from which his financial condition and business transactions might be ascertained and that such failure was not justified[.]"

The sole allegation of false oaths (§ 727(a)(4)(A)) was: "[s]aid Debtor failed to list some of the above-said properties in his schedules herein."

The sufficiency of the complaint was not questioned by motion or otherwise before trial. Yadidi, who testified at length, did not object to the trial evidence as being beyond the scope of the pleadings.

The evidence adduced at trial revealed, among other things, that Yadidi: had told different stories under oath about his interest in rental real estate; admitted to lying in deposition about the name of a co-owner (his brother); filed schedules and statements that were not accurate regarding the rental property; and had no records of income and multiple refinances of the rental property and few records of his income generally.

At the close of trial, the court did not find the facts specially and state separately its conclusions of law thereon. Rather, it opined that the debtor had not been truthful in his schedules, deposition, and at trial, and probably should not receive a bankruptcy discharge.[1]

The court, however, refused to deny discharge based on the complaint, ruling that the "law of this circuit is that a complaint deficient on its face is insufficient to sustain a denial of discharge." Instead, it ruled that § 105 provided separate authority for the court to deny a discharge in circumstances in which granting a discharge would constitute an abuse of process.

Accordingly, the court announced its "tentative" intent to deny discharge but

---

1. The oral ruling regarding defendant's veracity was:

[W]e come now to Mr. Yadidi's testimony today in his defense. And what we have is a witness who, when talking about his own conduct and his own signature and his own personal interest, says he—he wants to tell the truth and who takes an oath to tell the truth, disregards that oath and disregards that impulse when it comes to explaining his property, and he says, well, when it's—when it involves an interest of his brother, he's not required to tell the truth. When it requires property that may be in his name but in which he has no financial interest, he's not required to tell the truth, and when he engages in a personal refinancing of real estate

that he's owned since 1989, apparently after he filed his—this bankruptcy case on January 28th, 2000, and it involves the same property, Mr. Yadidi feels no obligation to tell the truth about that transaction, that refinancing that property, and Mr. Yadidi did not tell the truth about this property in his bankruptcy papers when he filed them on January 28th. He has not told the truth in this trial. He has not produced documents that ordinary people ordinarily have to document important transactions involving $200,000 real estate owned for 11 years, refinanced two or three times in the 11 years since.

So it seems to me that as we sit here today, Mr. Yadidi, in fairness and in justice, is not entitled to a discharge in bankruptcy.

continued the hearing, ordering the debtor, in the interim, to amend his schedules and statement of financial affairs to provide accurate and complete information about rental property and transactions that had been addressed at trial.

At the continued hearing, the court ruled that the debtor had not obeyed the order to amend schedules and denied discharge under § 105 on the rationale that, although the plaintiff demonstrated at trial that the debtor was not entitled to discharge under § 727, the "complaint was too conclusory in nature to support such a judgment."

Timely motions for reconsideration and new trial were denied at a hearing at which the court reiterated: "Plaintiff proved by a preponderance of the evidence that you [debtor] are not entitled to a discharge in bankruptcy."

This timely appeal ensued.

## JURISDICTION

The trial court had jurisdiction per 28 U.S.C. § 1334(b). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether the court correctly used its powers under 11 U.S.C. § 105 to deny a chapter 7 discharge.
2. Whether evidence adduced at trial can cure insufficient factual allegations in a complaint.

## STANDARD OF REVIEW

■ The scope of § 105 power, the effect of trial on a deficient pleading, and treatment of a pleading in a manner tantamount to dismissal for failure to state a claim are questions of law that we review de novo. *Graves v. Myrvang (In re Myr-*

*vang)*, 232 F.3d 1116, 1124 (9th Cir.2000) (§ 105); *Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1509 n. 5 (9th Cir. 1995) (Fed.R.Civ.P.8(a)); *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 (9th Cir.2001) (Fed.R.Civ.P.12(b)(6)). The application of § 105 power is reviewed for abuse of discretion, it being an abuse of discretion to apply an incorrect rule of law. *Gschwend v. Markus (In re Markus)*, 268 B.R. 556, 559 (9th Cir. BAP 2001).

## DISCUSSION

■ As this is an appeal from a denial of discharge, we focus on the merits of the use of § 105 to supplant the comprehensive denial-of-discharge scheme provided by § 727. We conclude it was neither necessary nor appropriate to use § 105 to trump § 727 in view of straightforward alternatives available under rules of federal civil trial procedure.

### I

The bankruptcy court denied the debtor a discharge in reliance on the authority recognized by § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and to take, sua sponte, "any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

In doing so, the court was declining to act on the complaint objecting to discharge under §§ 727(a)(3)–(a)(4) on which trial had been completed. Moreover, even though it observed that it would have, but for the shoddy complaint, denied discharge under § 727, the court did not make findings of fact and conclusions of law directed to the elements of the § 727 theories.[2]

**2.** The trial judge said:

I believe that [plaintiff] has demonstrated

In view of the absence of findings on the specific § 727 theories presented at trial, we can affirm this denial of discharge only if § 105 can be used in these circumstances to supplant § 727 and deny a discharge on different standards than what Congress prescribed in § 727.

## A

The nature of the jurisprudential foundation of § 105 is a complex subject that has proven difficult to corral.

Professors Nickles and Epstein argue that § 105 adds nothing as a source of supplemental law and is merely a recognition of the nonstatutory inherent, common law powers to interpret statutes interstitially, and equitable powers that already repose in courts. Thus, they assert that any construction of § 105 as an independent source of authority to make law risks crossing the fuzzy boundary between legitimate judicial interpretation and unconstitutional exercise of legislative powers. Steve H. Nickles & David G. Epstein, *Another Way of Thinking About Section 105(a) and Other Sources of Supplemental Law Under the Bankruptcy Code*, 2000 CHAPMAN L.REV. 7, 9–10 (2000).

Regardless of the outcome of the debate about the nature of § 105 and the ultimate demarcation of the true perimeter of legitimate exercise of whatever authority it recognizes, it is generally agreed that § 105 is not a roving commission to do equity or to do anything inconsistent with the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (equity powers); *Resorts Int'l, Inc. v. Lowenschuss (In re*

*Lowenschuss)*, 67 F.3d 1394, 1402 (9th Cir. 1995); *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.)*, 885 F.2d 621, 624–26 (9th Cir.1989); *Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F.2d 705, 713 (9th Cir.1986).

Moreover, the language of § 105 expressly limits itself to measures "necessary or appropriate to carry out the provisions of" the Bankruptcy Code, which is where our inquiry begins. *In re Golden Plan of Cal., Inc.*, 829 F.2d at 713. Thus, assuming (without deciding that § 105 can be used as authority to deny a chapter 7 discharge, our question becomes whether such use here was either "necessary" or "appropriate.") Necessity first.

## B

The necessity of pressing § 105 into service turns on whether there was an insurmountable procedural impediment to deciding the § 727 complaint at the end of trial. There was not. To the extent the complaint may have been deficient, the defects were easily cured by application of settled rules of procedure.

The court reasoned from the false premise that "a complaint deficient on its face is insufficient to sustain a denial of discharge" in this circuit. This is not an accurate statement of federal procedural rules or of our prior decisions.

### 1

Complaints and other pleadings setting forth claims in bankruptcy adversary proceedings are governed by the same rules that govern federal civil actions.

---

through the evidence in this trial that had there been a proper complaint in this case filed on May 1st, the evidence clearly supports claims under § 727 of the Bankruptcy Code, and the only reason I'm not entering a judgment under § 727 is because the

complaint was too conclusory in nature to support such a judgment, but I believe the—the evidence that has been offered is clearly sufficient to warrant a judgment under § 105.

A pleading asserting a claim contains: (1) a statement of basis for jurisdiction; (2) a "short and plain" statement of the claim showing the pleader is entitled to relief; and (3) a demand for judgment for the relief sought. Fed.R.Civ.P. 8(a), *incorporated by* Fed.R.Bankr.P. 7008(a).

An additional pleading requirement in bankruptcy adversary proceedings is that: a pleading setting forth a claim must state the pleader's position regarding the status of the claim as "core" or "non-core" under 28 U.S.C. § 157 and, if non-core, whether the pleader consents to entry of a final order or judgment by the bankruptcy judge. Fed.R.Bankr.P. 7008(a).

Some matters must be pled with particularity, including circumstances constituting fraud or mistake. Fed.R.Civ.P. 9(b), *incorporated by* Fed.R.Bankr.P. 7009.

We construe the complaint in light of reason and common sense so as to "do substantial justice." Fed.R.Civ.P. 8(f), *incorporated by* Fed.R.Bankr.P. 7008(a); 2 JAS.WM.MOORE ET AL, MOORE'S FED.PRAC.3D § 8.04[1] (2001) ("MOORE'S").

■ Pleading in federal practice is no longer a game of skill in which one misstep by counsel can be fatal. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The key concept is notice.

Clarification, greater particularity, and other refinements in pleadings are accomplished through a combination of motions, discovery, pretrial orders, and liberal toleration of amendments. *Conley,* 355 U.S. at 48 n. 9, 78 S.Ct. 99; *Bodine Produce, Inc. v. United Farm Workers Org. Comm.,* 494 F.2d 541, 556 (9th Cir.1974); 2 MOORE'S § 8.10[2]; 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED.PRAC. & PROC.2D § 1491 (1990) (Rule 15(b) "intended to promote the objective of deciding cases on their merits

rather than in terms of the relative pleading skills of counsel").

■ Thus, a defective complaint is not subject to dismissal with prejudice, i.e. without opportunity to amend or replead, unless either it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations or multiple repleadings have not cured the defects. *McHenry v. Renne,* 84 F.3d 1172, 1178–80 (9th Cir.1996); *Bodine Produce,* 494 F.2d at 556.

■ These requirements of liberal construction and of notice pleading, subject to liberal amendment and clarification during the pretrial phase, apply equally in bankruptcy as in general federal civil practice. *Dominguez,* 51 F.3d at 1508; *Semel v. Dill (In re Dill),* 731 F.2d 629, 631 (9th Cir. 1984).

### 2

■ We construe our decisions regarding pleadings as consistent with general federal civil practice.

We have repeatedly reversed dismissals of deficient complaints that have overemphasized technical rules of pleading without accommodating the process that provides generous opportunities to cure pleading defects.

Although we held in *State Farm Fire & Cas. Co. v. Jenkin (In re Jenkin),* 83 B.R. 733 (9th Cir. BAP 1988), that a complaint objecting to discharge under § 727 is deficient if it merely recites statutory language without stating the underlying facts with particularity, that was only half the holding. The second half was that it is error, in the absence of bad faith or undue prejudice, not to afford the plaintiff an opportunity to amend. *Id.* at 735. Thus, consistent with the mainstream rule disfavoring pleading-based dismissals with prej-

udice, we reversed the trial court's dismissal.

Moreover, in *Jenkin* we emphasized a special bankruptcy factor. The 60–day deadline from the date first set for the meeting of creditors under 11 U.S.C. § 341(a) for objections to discharge heightens the need to be tolerant of hasty pleadings. Fed.R.Bankr.P. 4004(a). We said that the opportunity to amend "is especially important in discharge cases because of the short [Rule 4004] time frame in which complaints must be filed." *Id.*

■ Thus, the accurate statement of our *Jenkin* holding is that a complaint objecting to discharge that merely recites statutory language is deficient but cannot be dismissed without opportunity to amend unless there is bad faith or undue prejudice.

Next, we extended the *Jenkin* analysis to nondischargeability actions under 11 U.S.C. § 523, again reversing a dismissal. *Mission Viejo Nat'l Bank v. Englander (In re Englander)*, 92 B.R. 425, 427–28 (9th Cir. BAP 1988). There, a creditor filed, and later amended, a complaint making a barebones assertion of nondischargeability under § 523 three days before the 60–day deadline for filing such actions. Fed.R.Bankr.P. 4007(c).

We reversed the dismissal of the amended complaint, rejecting the trial court's theory that filing a deficient complaint was an illegitimate method of awarding oneself an extension of the 60–day deadline prescribed by Rule 4007(c) without demonstrating the "cause" required by that rule. We reasoned that applicable civil rules permitted the amendment "as a matter of course" with attendant "relation back" because it arose out of the same conduct attempted to be set forth in the original complaint and that, moreover, the dynamics of an early deadline necessitated a lenient approach. *Id.;* Fed.R.Civ.P. 15(a) &

(c)(2), *incorporated by* Fed.R.Bankr.P. 7015.

In *Englander,* we construed the "particularity" requirement in Civil Rule 9(b) generously in favor of a plaintiff whose factual allegations of fraud ("[d]efendants furnished plaintiff with verbal and/or written information stating an inflated or inaccurate value of the collateral pledged for the loans") were sparse, ruling that this allegation was, in context, particular enough to enable a defense. *Englander,* 92 B.R. at 428.

Next, we applied Civil Rule 8(f) to reverse the dismissal of a confused complaint sounding in both § 523 nondischargeability and § 727 objection to discharge, but that named only § 523 in the demand. *Vaughn v. Aboukhater (In re Aboukhater)*, 165 B.R. 904, 911–12 (9th Cir. BAP 1994). Since the alleged facts, if true, could support denial of discharge, we ruled that the motion to dismiss should have been construed as a motion for more definite statement under Federal Rule of Civil Procedure 12(e) and that plaintiff had a right to amend. Fed.R.Civ.P. 12(e), *incorporated by* Fed.R.Bankr.P. 7012(b).

We also have ruled that a default judgment can be granted on a defective complaint objecting to discharge. *Kubick v. FDIC (In re Kubick)*, 171 B.R. 658, 662 (9th Cir. BAP 1994). Although, in *Kubick,* we reversed a default judgment on a deficient complaint that merely restated subsections of § 727 without alleging additional facts, we did so because of an inadequate record.

The *Kubick* problem was that default judgment was entered on an insufficient complaint without a record to show that the court exercised informed discretion about whether to grant judgment by default, as required by controlling authority. *Eitel v. McCool,* 782 F.2d 1470, 1471–72

(9th Cir.1986). We emphasized that, on remand, a default judgment could be granted on the deficient complaint, but only after demonstration of the exercise of informed discretion. *Kubick,* 171 B.R. at 662. Moreover, since no answer had been filed, it still would have been timely for plaintiff to amend its complaint "as a matter of course." Fed.R.Civ.P. 15(a), *incorporated by* Fed.R.Bankr.P. 7015.

In short, our decisions do not preclude judgment on a complaint that is defective solely because it quotes substantive Bankruptcy Code provisions without alleging additional fact.

This militates against a conclusion that it was "necessary" to employ § 105.

### 3

The procedure for amending complaints to conform to evidence adduced at trial further confirms that it was not "necessary" to use § 105 to sidestep the problem of the deficient pleading.

The deficiency in the complaint was the paucity of factual averments, which could be cured either by way of a more definite statement or an amendment to the complaint. Fed.R.Civ.P. 12(e), *incorporated by* Fed.R.Bankr.P. 7012(b); Fed.R.Civ.P. 15, *incorporated by* Fed.R.Bankr.P. 7015.

■ Once a trial has been conducted, Civil Rule 15(b) permits the pleadings to be amended to conform to the evidence so that, by definition, any factual gaps on counts actually alleged in the complaint are filled:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Fed.R.Civ.P. 15(b), *incorporated by* Fed.R.Bankr.P. 7015.

■ Civil Rule 15(b) is designed to be automatic and is not waived by omission to make a timely motion. The key question is whether there has been the requisite consent of the parties. If the court enters judgment on an issue litigated by consent without the pleadings having been formally amended, the lack of amendment does not matter.

Herzlich's complaint expressly included §§ 727(a)(3) and (a)(4) as bases for relief, which were the only two theories pursued at trial. They were emphasized in the opening statement.[3] As the evidence that was presented was focused only on those two claims for relief, the defendant understood that the evidence was introduced for the purpose of proving those claims for relief and that those were the issues being directly addressed. *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 34 F.3d 800, 814 (9th Cir.1994); *LaLonde v. Davis,* 879 F.2d 665, 667 (9th Cir.1989).

■ When facts probative of claims actually alleged in the pleading came into evidence at trial without objection, the factual issues (i.e. the factual allegations that

---

**3.** Here is the entire opening statement:

PLAINTIFF'S COUNSEL: As your Honor is aware, the Bankruptcy Code and its protections were intended for the honest debtor. The evidence today will show that this is not the honest debtor, that this debtor knowingly and willfully has fraudulently made oaths to this Court concerning the main asset of his bankruptcy estate, namely, a home that he rents out, and that he has failed to keep any records concerning either that asset or other income and expenses that he has.

would have saved the complaint from being deficient) were tried by implied consent of the parties. Those factual issues were required to be treated in all respects as if they (i.e. the facts) had been raised in the pleadings. Fed.R.Bankr.P. 15(b); *Campbell v. Trustees of Leland Stanford Jr. Univ.*, 817 F.2d 499, 506 (9th Cir.1987). Thus, the deficiency in the complaint was cured.

This analysis is not affected by the Ninth Circuit's occasional observation that a "court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings." *Crawford v. Gould*, 56 F.3d 1162, 1168 (9th Cir.1995), *quoting Brawner v. Pearl Assurance Co.*, 267 F.2d 45, 47 n. 2 (9th Cir.1958). Those cases both involved summary judgments and the question of relief, not otherwise litigated, beyond what was named in the demand in the complaint. Once a case is actually tried, what was actually litigated takes precedence over the pleadings.

Thus, the putative deficiency in the original complaint had become irrelevant once trial was held. The gaps had been filled in by evidence. The plaintiff had either proved or not, as opposed to merely having alleged, facts sufficient to support the relief requested. *See Bennett v. Pippin*, 74 F.3d 578, 585 (5th Cir.1996). There was no impediment to deciding the merits of the action and no necessity for a dubious invocation of § 105.

### B

██ Whether it was "appropriate" to use § 105 to deny a chapter 7 discharge entails a comparison with § 727.

### 1

Congress created in § 727 a comprehensive scheme regulating the grant and denial of chapter 7 discharges. It was precise about states of mind, other elements, and defenses.

██ As relevant here, a discharge may be denied for false oaths, if made "knowingly and fraudulently." 11 U.S.C. § 727(a)(4)(A).

██ Similarly, a failure to keep recorded information from which the debtor's financial condition might be ascertained will not preclude a discharge if the failure to act was "justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

The trial judge indicated that Yadidi's discharge could be denied on the basis of those two subsections but did not make precise determinations about whether the defendant's false oaths were knowing and fraudulent or whether the lack of records was justified under all the circumstances of the case. Hence, the denial of discharge under § 105 stands on more nebulous footing.

Measured against the detailed scheme reflected in § 727, the § 105 power upon which the trial court relied has no apparent standards other than the sound discretion of the court. As the exercise of § 105 authority must be linked to some specific provision of the Bankruptcy Code that would be furthered, the obvious link is the scheme at § 727(a)(1)–(10).

The consequence of this use of § 105 would amount to adding a new subsection (a)(11): "the court may in its discretion deny a discharge." Whether this would ever be permissible is debatable but, in any event, would require considerably more persuasive justification than is present in this appeal.

Accordingly, it was not "appropriate" to use § 105 to deny a discharge in this case.

## 2

It is never "appropriate" for purposes of § 105 to abuse one's discretion.

To the extent the trial court acted because it believed that the law precluded entry of judgment following trial on the deficient complaint, it was relying upon an incorrect rule of law, which is, by definition, an abuse of discretion.

To the extent the court acted on some other motive—such as a salutary effort to educate counsel about better lawyering[4]— the justification for doing so within the construct of § 105 after the close of trial is not compelling and hence not "appropriate" for purposes of § 105.

Accordingly, the denial of discharge under § 105 was error. Such an extension was neither "necessary" nor "appropriate."

## II

The problem becomes what to do with this appeal in light of the erroneous use of § 105. The court's ruling makes clear it believed that, if it were to make the determinations required by § 727, the debtor's discharge would be doomed.

We are authorized to treat a trial court's error as harmless and to affirm for some other reason fairly supported by the record. 28 U.S.C. § 2111; *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937) ("In the review of judicial proceedings the rule is settled that if the decision of the court below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a

wrong reason"); *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.,* 159 F.3d 412, 418 (9th Cir.1998); *Claar v. Burlington N.R.R.,* 29 F.3d 499, 501 n. 1 (9th Cir.1994).

While it is tempting to rely on the court's general observation that it would deny a discharge under § 727 and rule that the court reached the correct result for an incorrect reason, the lack of findings of fact and conclusions of law requires us to resist the temptation.

The purposes of requiring findings of fact and conclusions of law under Civil Rule 52 are, primarily, that the exercise promotes care by assuring that the trier of fact focuses on all pertinent elements in a disciplined manner and, secondarily, to enable more thoughtful appellate review. Fed.R.Civ.P. 52, *incorporated by* Fed. R.Bankr.P. 7052; 9 MOORE's § 52.02[1].

Judge Frank's classic statement of the value of promoting care through formal findings can hardly be improved upon:

> For, as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper.

*United States v. Forness,* 125 F.2d 928, 942 (2d Cir.1942).

What we have here is the expression of "a strong impression that, on the basis of

---

4. We emphasize that sloppiness, while not necessarily fatal, is not effective advocacy. As Judge Learned Hand once noted:

I must own that in my salad days, when the lust of combat still raged within me, I rather welcomed the opportunity afforded by the meandering trickle of a sloppy pleading. Here was indeed an occasion to teach practitioners that unless they had learned their

craft they should have a short shrift and a long rope.... [But now] I make no effort to disentangle from the junk pile presented to me those structural pieces, which, had they been properly chosen and erected, would have made a fair building.
Learned Hand, *The Deficiencies of Trials to Reach the Heart of the Matter,* 3 LECTURES ON LEGAL TOPICS 87 (1921).

the evidence, the facts" warrant denial of discharge under § 727. Perhaps that impression will be borne out when the facts are articulated through the matrix of § 727 in the cold light of day; perhaps not. Hence, we are not in a position to be able to affirm on an alternative ground.

## CONCLUSION

The invocation § 105 to deny a discharge was error because there is a straightforward procedural method to fill the gaps in the defective complaint and because the facts present garden-variety issues encompassed by § 727.

We VACATE the order denying discharge and REMAND for entry of findings of fact and conclusions of law and an appropriate judgment thereon.