**In re Raul MUNOZ, Debtor.**

**Carmelina Ruvacalba, individually and as guardian ad litem and trustee for Stephanie Gonzalez, a minor, Appellants,**

v.

**Raul Munoz; California Uninsured Employers Fund, Appellees.**

BAP No. CC–02–1201–MoJK.

Bankruptcy No. LA 00–39524–ER.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 19, 2002.

Filed Dec. 26, 2002.

Robert B. Steinberg, Los Angeles, CA, for Carmelina Ruvacalba; Stephanie Gonzalez.

John A. Siqueiros, Department of Industrial Relations, Los Angeles, CA, for Amicus Curiae.

Nancy Miller Bennett, Thousand Oaks, CA, for Raul Munoz.

Before MONTALI, JAROSLOVSKY[1] and KLEIN, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This appeal requires us to revisit the problem of the effect of the bankruptcy discharge on nonbankruptcy litigation.

---

**1.** Hon. Alan Jaroslovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

The bankruptcy court blocked a post-discharge workers' compensation action that was being pursued by appellants for the limited purpose of obtaining a California Workers' Compensation Appeals Board ("WCAB") award against the debtor that is required for payment from the state's Uninsured Employers Fund ("UEF"). The court reasoned that barring recovery would "protect" the debtor's discharge because a UEF payment would trigger a reimbursement obligation that might be a nondischargeable excise tax.

Treating the court's procedurally incorrect order as a declaratory judgment that the discharge injunction prohibits an action designed to obtain payment from a source other than the debtor that might result in a nondischargeable debt, we REVERSE on the basis of Bankruptcy Code § 524(e) and the inability of a court to modify the § 524(a)(2) statutory injunction.

## FACTS

Raul Munoz filed his chapter 7 bankruptcy case one week after the WCAB ruled that he was an "illegally uninsured employer" who was required to pay a workers' compensation award of about $150,000 to the dependents (the appellants here) of an "employee" who died on the job.

The bankruptcy was filed October 19, 2000. A discharge was entered January 22, 2001. The case was closed February 2, 2001.

The bankruptcy led the WCAB to suspend proceedings on Munoz's Reconsideration Petition (per Cal. Lab.Code § 5900), which must be decided in order for the workers' compensation award to become final. The consequence of this lack of finality has been to forestall payment by the UEF, which (per Cal. Lab.Code §§ 3710–32) pays WCAB awards against illegally uninsured employers once the award becomes final and remains unpaid for ten days. The UEF is then entitled to recover from the uninsured.

Faced with a stay by the WCAB that stymied their efforts to collect from the UEF, the appellants filed a "Motion For Relief From Automatic Stay/Modification For Relief From Discharge Injunction" in the bankruptcy court, which reopened the case. Their stated purpose was to obtain permission to establish the debtor's liability following which "Movants will seek payment from the [UEF] only, and not the Debtor."

The UEF supported the motion, urging that the discharge injunction be modified to allow the WCAB to finalize the award so that the UEF could pay. It also asserted that the ensuing reimbursement obligation would be nondischargeable.

The debtor opposed the motion, arguing that allowing the UEF to pay would offend the 11 U.S.C. § 524(a)(2) discharge injunction because it could result in a nondischargeable debt.

The bankruptcy court ruled orally that it was "inclined to protect the discharge" and that it would treat the matter as a motion addressed to the automatic stay under 11 U.S.C. § 362, which (incorporating a "tentative" ruling that is not of record) it proceeded to deny.

The "Order Denying Motion For Relief From Automatic Stay/Modification For Relief From Discharge Injunction" was entered March 7, 2002. This timely appeal ensued.

## JURISDICTION

Federal subject matter jurisdiction is based on 28 U.S.C. § 1334. A proceeding regarding application and enforcement of the discharge injunction is a core proceeding affecting the adjustment of the debtor-

creditor relationship that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(O). We have jurisdiction per 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether disregard of the requirement for an adversary proceeding to obtain a declaratory judgment was harmless error.

2. Whether the Bankruptcy Code § 524(a)(2) statutory discharge injunction may be modified by a court.

3. Whether Bankruptcy Code §§ 524(a) and (e) permit a creditor to recover from a state's uninsured employers fund when there is a potentially nondischargeable reimbursement obligation.

## STANDARD OF REVIEW

■ We review questions regarding construction of the Bankruptcy Code and applicable rules of procedure de novo. *Yadidi v. Herzlich (In re Yadidi)*, 274 B.R. 843, 847 (9th Cir. BAP 2002).

## DISCUSSION

The record reflects some common myths about the bankruptcy discharge that need to be demythologized.

The assumption that the § 362 automatic stay protects the debtor after discharge is incorrect; the automatic stay expires as to interests of the debtor when the discharge issues. The assumption that the § 524(a)(2) statutory discharge injunction can be modified is incorrect; the discharge injunction is set in statutory concrete. The assumption that the discharge injunc-

tion bars actions that could lead to determination of nondischargeable debt is also incorrect; neither the discharge nor the discharge injunction shields a debtor from nondischargeable debt.

Further, the assumption made by the WCAB that a bankruptcy court order is required any time an action is taken nominally against a debtor after discharge is also incorrect. The § 524(a)(2) discharge injunction prohibits only actions to recover a debt as a personal liability of the debtor. Where the purpose of the action is to collect from a collateral source, such as insurance or the UEF, and the plaintiff makes it clear that it is not naming the debtor as a party for anything other than formal reasons, no bankruptcy court order is necessary. *Patronite v. Beeney (In re Beeney)*, 142 B.R. 360, 363 (9th Cir. BAP 1992).[2]

## I

We begin by addressing the chaotic procedure entailed in the "Motion For Relief From Automatic Stay/Modification For Relief From Discharge Injunction."

The one thing that is clear is that the parties thought they were litigating, and the court thought it was deciding, the questions whether the § 524(a)(2) discharge injunction applied and, if so, whether to allow the WCAB proceeding to be concluded.

## A

There are two procedural difficulties inherent in use of the "Motion For Relief From Automatic Stay/Modification For Relief From Discharge Injunction" to re-

---

**2.** In *Beeney,* we explained that the discharge injunction does not preclude an action naming the discharged debtor as a party in litigation in a nonbankruptcy forum where it is clear that recovery will be limited to insurance proceeds. The same rationale permits an action at the WCAB for the purposes of collecting from the UEF. It does not matter that the debtor is a nominal defendant, as in *Beeney,* or whether the litigation is not against the debtor but might result in liability of the debtor to a third party by operation of law.

move the bankruptcy cloud from the WCAB proceeding.

■ First, the existence of a discharge means that there is no automatic stay from which relief may be granted to permit an action against the debtor. Insofar as the automatic stay bars actions against the debtor, the stay automatically expires upon the grant of a discharge. 11 U.S.C. § 362(c)(2)(C).[3] In other words, taking the order on appeal at face value as a refusal to grant relief from the automatic stay, the order purports to leave in place an automatic stay that no longer exists.

■ Second, determinations regarding the scope of the discharge require a declaratory judgment obtained in an adversary proceeding. Fed. R. Bankr.P. 7001(9); *Ung v. Boni (In re Boni)*, 240 B.R. 381, 385–86 (9th Cir. BAP 1999). It is long-settled that an action asking a court that is administering an injunction whether it applies to proposed conduct is justiciable notwithstanding that the ruling is advisory in nature. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15–16, 65 S.Ct. 478, 89 L.Ed. 661 (1945); *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 200 (7th Cir.1993).

■ It is error to circumvent the requirement of an adversary proceeding by using a "contested matter" motion under Federal Rule of Bankruptcy Procedure 9014. *Bear v. Coben (In re Golden Plan)*, 829 F.2d 705, 711–12 (9th Cir.1986); *GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 660 (9th Cir. BAP 1999); *Boni*, 240 B.R. at 385–86.

■ Such an error may nevertheless be harmless when the record of the procedur-

ally incorrect "contested matter" is developed to a sufficient degree that the record of an adversary proceeding likely would not have been materially different. In such circumstances, the error does not affect the substantial rights of the parties and is not inconsistent with substantial justice. 28 U.S.C. § 2111; Fed.R.Civ.P. 61, *incorporated by* Fed. R. Bankr.P. 9005; *Trust Corp. v. Patterson (In re Copper King Inn, Inc.)*, 918 F.2d 1404, 1406–07 (9th Cir.1990); *Laskin v. First Nat'l Bank (In re Laskin)*, 222 B.R. 872, 874 (9th Cir. BAP 1998); *United States v. Valley Nat'l Bank (In re Decker)*, 199 B.R. 684, 689–90 (9th Cir. BAP 1996).

But where the record might have been materially different with an adversary proceeding, reversal ensues. *Golden Plan*, 829 F.2d at 714; *Loloee*, 241 B.R. at 660; *Boni*, 240 B.R. at 385.

■ We conclude that, although it was error to have ignored the requirement of an adversary proceeding, the error is harmless this time. The material facts are few and undisputed. The critical questions are pure questions of law. Not only are the parties content with the procedure that has been followed, we are satisfied that neither the factual record nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding.

### B

Having concluded that the incorrect procedure was harmless error, we are nevertheless confronted with the problem of

---

**3.** The subsection provides, in relevant part:

　(2) the stay of any other act [i.e., other than acts against property of the estate] under subsection (a) of this section continues until the earliest of—

　. . .

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c)(2).

how to construe the order on appeal that purports to refuse to vacate an automatic stay that does not exist. The solution to the dilemma is to redesignate the order to what it would have been if the proper procedure had been followed.

Exercising our authority under Federal Rule of Bankruptcy Procedure 9005 to correct defects or cure omissions that do not affect substantial rights, we redesignate the order on appeal to be (consistent with the court's intended result of "protecting" the discharge) a declaratory judgment that the discharge injunction precludes, and will not be modified to enable, completion of the WCAB proceeding. Fed. R. Bankr.P. 9005.[4]

Our focus shifts to the substantive questions of whether the § 524(a)(2) discharge injunction can be modified and whether it bars completion of the appellants' WCAB proceeding.

## II

The first substantive question is whether the § 524(a)(2) discharge injunction can be modified. Everybody heretofore involved in this dispute has assumed that it can be modified and has done so understandably, for a substantial body of case law makes the same assumption. This oft-repeated assumption, however, is flawed by a curious failure to consider the implications of the statutory nature of the injunction. Frequent repetition of a myth does not make it true.

## A

■■ We must consider the § 524(a)(2) discharge injunction, through the matrix of settled law "that, when [trial] courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise" and that such "discretion is displaced only by a 'clear and valid legislative command.'" *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001), *quoting Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).

The question, then, is whether there is a "clear and valid legislative command" constraining the bankruptcy court's discretion over the § 524(a)(2) discharge injunction, which is neither drafted nor issued by a court. It is, rather, a legal consequence of the order granting a discharge, the terms of which injunction are prescribed by statute:

(a) A discharge in a case under this title—

. . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

11 U.S.C. § 524(a)(2)(2).

Nothing in this language hints at the existence of discretion over the terms of the injunction.

■ The § 524(a)(2) discharge injunction does not come with some ameliorative phrase—such as "unless the court orders otherwise"—that would connote judicial discretion over its terms.[5] Nor does it

---

**4.** Rule 9005 provides:

Rule 61 F.R. Civ. P. applies in cases under the Code. When appropriate, the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights.

Fed. R. Bankr.P. 9005.

**5.** The only arguable statutory basis for varying terms of the § 524(a)(2) discharge injunction would be 11 U.S.C. § 105, which may not, however, be used to vary the provisions

contain a provision paralleling the express authorization in § 362(d) for the court to terminate, annul, modify, or condition the automatic stay.[6]

The closest discharge injunction analog to § 362(d) is the statutory power to revoke discharges obtained by fraud, which revocation has the automatic consequence of removing the factual predicate for the discharge injunction. 11 U.S.C. §§ 727(d), 1144(2),[7] 1228(d) & 1328(e). Likewise, the court also has the procedural authority to vacate an order granting a discharge. Fed.R.Civ.P. 60, *incorporated by* Fed. R. Bankr.P. 9024. These powers of revocation, however, are too slender a reed to support an inference of judicial discretion.

In short, this statutory scheme constitutes a "clear and valid" legislative command that leaves no discretion in the court to "modify" the discharge injunction.

### B

 The fact that the court does not have authority to "modify" the § 524(a)(2) discharge injunction does not take away the fact that the court is required to administer and enforce it.

The § 524(a)(2) discharge injunction casts a wide shadow, with a large penumbra. For example, applying the phrase "collect ... as a personal liability of the debtor" can be a confusing concept in particular situations in which the discharged debtor is formally a party. Cautious litigants who recognize that the boundary is fuzzy seek the comfort of clarification whether their particular situations are subject to the injunction.

The court's tools for dealing with these ambiguities lie in its power to "construe" § 524(a)(2) and in its power to fashion enforcement measures for violations.

 These differences are no mere semantics. While, at the margin of ambiguity, there may be little practical difference between "construing" § 524(a)(2) and modifying the injunction, the difference becomes more outcome determinative the less ambiguous the applicability of the injunction. Moreover, there is a substantial difference in the standard of review on appeal. Construction of the statute is a question of law reviewed de novo, while modifying an injunction is normally reviewed for abuse of discretion.

### C

If the § 524(a)(2) discharge injunction cannot be modified, then we need to explain how one should make sense of decisions that appear to say that the discharge can be modified. Typically, these cases can be explained on the basis of straightforward statutory construction.

One leading example is the Seventh Circuit's decision in *Hendrix* in which it opined that, although the Bankruptcy Code is silent about modification of the discharge injunction, "any court that issues an injunction can modify it for good cause on the motion of a person adversely affected by it." *Hendrix,* 986 F.2d at 198.

---

of another section of the Bankruptcy Code. *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1402 (9th Cir.1995); *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods),* 885 F.2d 621, 624–26 (9th Cir.1989); *Yadidi,* 274 B.R. at 848.

**6.** The court's authority over the automatic stay is conferred by the following language:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

11 U.S.C. § 362(d).

**7.** Chapter 9 incorporates § 1144(2). 11 U.S.C. § 901(a).

While, as noted above, that is a standard statement of general injunction law, it ignores the question of whether Congress deprived the court of discretion and ignores the fact that the cases upon which it relied involved injunctions fashioned by a court rather than an injunction written into a statute. In the end, the observation may be chalked off to pure dictum because the narrow holding was that the § 524(a)(2) discharge injunction did not preclude an action focused on collecting insurance proceeds that was only nominally against the debtor. *Id.* at 197.

A recent example of the genre from a district court in the Ninth Circuit on nearly identical facts to the instant appeal is *Slali v. Ruiz (In re Slali)*, 282 B.R. 225 (C.D.Cal.2002). In consolidated appeals, the district court affirmed orders that allowed prosecution of WCAB proceedings against two debtors for the purpose of qualifying for UEF payments—one from a pre-discharge order granting relief from the automatic stay [8] (later supplanted by a discharge injunction), the other a post-discharge order modifying the § 524(a)(2) discharge injunction.

The *Slali* court reasoned that the § 524(a)(2) discharge injunctions probably did not bar the WCAB action from proceeding in light of § 524(e) (which we address in the next section) but that it nevertheless was not an abuse of discretion for the court to modify the injunction.

In validating the bankruptcy court's orders, the *Slali* court applied the so-called *Czuba* test articulated by a Minnesota bankruptcy court that focuses upon whether the discharged debtors are necessary parties, whether the litigation will be a financial hardship on the discharged debtors, and whether there would be a recovery from the debtor. *Slali*, 282 B.R. at 230–32; *In re Czuba*, 146 B.R. 225, 228–29 (Bankr.D.Minn.1992).

We think that the *Slali* court reached the correct result in the sense of permitting the WCAB actions to proceed, but do not agree with it (or with the *Czuba* court) that the discharge can ever be modified. Rather, we think that the *Czuba* test constitutes a sound method of construing § 524(a)(2) to determine whether an action is being pursued "to collect, recover, or offset any [discharged] debt *as a personal liability of the debtor*" rather than a method of justifying a modification of the injunction. Thus, the *Slali* conclusion should have been that the WCAB actions were not precluded by the § 524(a)(2) discharge injunction.

In short, the cases that purport to involve the modification of the § 524(a)(2) discharge injunction generally are better explained as decisions in which the essential analysis amounts to construing § 524(a)(2).

### III

The final question requires us to construe the § 524(a)(2) discharge injunction. The bankruptcy court, by invoking the concept of "protecting the discharge" as a reason to grant permission to complete the WCAB action, implicitly ruled that the discharge injunction does apply.

---

**8.** It warrants clarification and emphasis that the § 362 automatic stay is broader than the discharge injunction (because § 362 does not contain such limiting concepts as "personal liability of the debtor") and unquestionably applied to the WCAB action. Thus, the WCAB is correct in regarding its proceedings as stayed during the pre-discharge phase of a bankruptcy and is correct in regarding the closing of a case as a reliable indication that the automatic stay has expired. As this opinion makes clear, so long as a WCAB action does not operate against property of the estate, the automatic stay ceases to be an impediment once the discharge is entered, which is often long before the case is closed.

We first consider whether the discharge injunction applies to the WCAB action that is designed to qualify for payment by the UEF. Then we consider the additional dimension of whether the potential for a nondischargeable reimbursement obligation changes the result. In the end, we reach the same conclusion as the district court in *Slali*.

### A

■ The § 524(a)(2) discharge injunction bars the WCAB action only if it constitutes "an action ... to collect, recover or offset any [discharged] debt *as a personal liability of the debtor*." 11 U.S.C. § 524(a)(2) (emphasis supplied).

The construction of this language is affected by § 524(e), which provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). This prevents us from construing § 524(a)(2) in a manner that would shield another entity that would be liable to pay if the debtor does not.

If a final WCAB judgment is rendered against the debtor and he does not pay within the period fixed by state law, then the UEF must pay. That situation straightforwardly complies with the requirements of § 524(e). Hence, we hold that § 524(e) compels us to construe § 524(a)(2) such that the discharge injunction is not a bar to completing the WCAB proceeding.

At the initial level, it is not an action directed at the "personal liability of the debtor" under § 524(a)(2).

### B

■ The next issue is whether it makes any difference that there is a potential that the WCAB judgment will precipitate a nondischargeable debt for an excise tax. In this analysis, we assume without deciding that the UEF reimbursement obligation would be a nondischargeable excise tax.[9] In the end, we agree with the district court in *Slali* that the potential for a nondischargeable debt to result from the WCAB action does not make the § 524(a)(2) discharge injunction applicable.

The key to the statutory analysis is § 524(a)(1), which must be read in pari materia with § 524(a)(2):

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to *any debt discharged* under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

11 U.S.C. § 524(a)(1) (emphasis supplied).

This provision fits into the present analysis in two key respects. First, the emphasized language from § 524(a)(1)—*any debt discharged*—affects the construction of the § 524(a)(2) discharge injunction because that phrase is the antecedent to the phrase

---

**9.** The Ninth Circuit has never actually held California's UEF reimbursement scheme to constitute a nondischargeable excise tax. Since workers' compensation schemes are creatures of idiosyncratic state statutes, the fact the Arizona's similar reimbursement obligation was held to be an excise tax will not necessarily require the same conclusion for California. *See Indus. Comm'n v. Camilli (In re Camilli)*, 94 F.3d 1330, 1331 (9th Cir.1996). Even if it is an excise tax, it is uncertain whether it would also satisfy the timing criteria for nondischargeability. *See DeRoche v. Arizona Indus. Comm'n (In re DeRoche)*, 287 F.3d 751, 756–57 (9th Cir.2002).

*"such debt"* that is part of the definition of the scope of § 524(a)(2).

The corollary is that the § 524(a)(2) discharge injunction does not, by its straightforward terms, apply to protect the debtor from any debt that is not discharged.

Second, the phrase "at any time obtained" in § 524(a)(1) operates to void *future* judgments to the extent that such judgments are determinations of the personal liability of the debtor.

This feature of § 524(a)(1) that makes such judgments void ab initio to the specified extent is self-executing and is central to a statutory structure in which Congress was expressly making it possible for a debtor to ignore a creditor's subsequent action on a discharged debt in a nonbankruptcy court. As we have previously explained, it also operates as a statutory exception to the Full Faith and Credit Statute (28 U.S.C. § 1738) and permits collateral attack of nonbankruptcy court judgments in bankruptcy court notwithstanding the so-called *Rooker–Feldman* doctrine. *Pavelich v. McCormick, Barstow et al. (In re Pavelich)*, 229 B.R. 777, 781–83 (9th Cir. BAP 1999); *accord, Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1078–84 (9th Cir. 2000) (automatic stay & *Rooker–Feldman* ).

This self-executing feature of § 524(a)(1), which voids judgments to the extent they offend, complements parallel language of the § 524(a)(2) discharge injunction. It affords latitude to construe the injunction so as to permit nonbankruptcy actions to proceed post-discharge. It acts as a safety net by assuring that any judgment determining a debtor's personal liability on a discharged debt cannot be enforced to that extent and can be collaterally attacked in bankruptcy court.

It follows that, to the extent the WCAB action leads to collection "as a personal liability of the debtor" on a debt that is excepted from discharge, the § 524(a)(2) discharge injunction does not apply because it does not involve a discharged debt.

The district court in *Slali* reasoned that one "cannot object that the court should protect them from the hardship of paying a debt which the law makes nondischargeable." *Slali*, 282 B.R. at 231. We agree.

## CONCLUSION

We hold that the procedurally deficient order on appeal be deemed to be a declaratory judgment that the § 524(a)(2) discharge injunction precludes completion of the WCAB proceeding, that the § 524(a)(2) discharge injunction does not preclude such completion, and that the § 524(a)(2) discharge injunction does not protect a debtor from an action to determine the debtor's liability on a nondischargeable debt. Accordingly, we REVERSE.

MONTALI, Bankruptcy Judge, concurring.

I concur in the result reached but I cannot join Part II of the opinion because it is dictum. In Part I, we quite properly treat the order on appeal as a declaratory judgment. In Part III, we reverse that redesignated judgment because we have concluded that Bankruptcy Code section 524(a)(2) does not bar appellants' action before the WCAB.

Part II, on the other hand, focuses on issues extraneous to our holding [10] and not

---

10. Even if we needed to address the question of whether the discharge injunction could be modified, I would disagree with the majority on the substantive issue. While the authorities are cited properly and the logic of the analysis is sound, the fact is that nothing in

raised by the parties. As an appellate court, we should not *sua sponte* raise issues (or non-issues) in order to correct perceived deficiencies in existing case law. *See generally, Com–1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.)* 278 B.R. 189, 199–200 (9th Cir. BAP .2002) (Montali, J., concurring and dissenting).

the Bankruptcy Code prohibits the court from modifying the injunction. Consequently, I believe that *Hendrix, Hawxhurst v. Pettibone Corp.,* 40 F.3d 175 (7th Cir.1994), *Czuba,* and *Slali* offer an acceptable solution where a discharge injunction may have been erroneously applied and invoked by a state court or others to stay prosecution of an action to collect from third parties.