In re Eric DeROCHE; Mary DeRoche, Debtors.

Eric DeRoche; Mary DeRoche, Appellants,

v.

Arizona Industrial Commission, Appellee.

No. 99–16058.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 2001.

Filed April 5, 2002.

Allan NewDelman, Phoenix, AZ, for the appellants.

Tracy Essig, Office of the Attorney General, Phoenix, AZ, for the appellee.

Before HUG, JR., NOONAN, and W. FLETCHER, Circuit Judges.

## ORDER

This court's opinion, filed November 29, 2001, is hereby WITHDRAWN and replaced with the attached opinion.

With the filing of this new opinion, the panel has voted unanimously to deny the

petition for rehearing. Judge W. Fletcher has voted to deny the petition for rehearing en banc, and Judges Hug and Noonan so recommend.

A judge of the court called for a vote on the petition for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R.App. P. 35(f).

The petition for rehearing and the petition for rehearing en banc, filed December 13, 2001, are **DENIED.**

## OPINION

WILLIAM A. FLETCHER, Circuit Judge.

The Bankruptcy Code provides that "an excise tax on ... a transaction occurring during the three years immediately preceding the date of the filing of the [bankruptcy] petition" is not dischargeable in bankruptcy. 11 U.S.C. § 507(a)(8)(E)(ii).[1] *See also* 11 U.S.C. § 523(a)(1)(A). In this case, an employer failed to carry workers' compensation insurance, and an injured employee was compensated directly from a "Special Fund" maintained by the Industrial Commission of Arizona ("Commission"). Under Arizona law, an employer who has failed to carry insurance is required to reimburse the Special Fund for compensation paid to an injured employee, plus penalties and interest.

■ We have previously held that reimbursement of the Special Fund is an "excise tax" within the meaning of § 507(a)(8)(E)(ii). *See Industrial Comm'n of Ariz. v. Camilli (In re Camilli)*, 94 F.3d 1330, 1333–34 (9th Cir.1996). In this case,

we are asked to decide the date of the "transaction" on which this excise tax is based in order to determine the three-year period of non-dischargeability. We hold that a "transaction" is the act of employing a worker without carrying the required insurance when the worker is injured. The date of the transaction is thus the date on which the worker is injured. In so holding, we agree with the holding in *Bliemeister v. Industrial Comm'n of Ariz. (In re Bliemeister)*, 251 B.R. 383, 394–96 (Bankr.D.Ariz.2000).

## I

At all relevant times, Eric and Mary DeRoche ("the DeRoches") owned and operated the Desert Auto and Truck Service ("Desert Auto") in Mesa, Arizona. While working as a mechanic at Desert Auto, Rodney Sandry was injured on July 30, 1991. Sandry sought workers' compensation, and on October 3, 1991, the Industrial Commission of Arizona notified him that his claim had been accepted. Because the DeRoches did not carry workers' compensation insurance as required by Arizona law, Sandry was compensated out of the Arizona Special Fund, and the DeRoches were required to reimburse the Fund for that compensation, plus penalties and interest.

On October 24, 1991, the Commission sent a notice to the DeRoches, stating that it would pay compensation to Sandry based on an average monthly wage of $1,949.85. On November 4, 1991, the Commission sent an apparently superceding notice stating, "Compensation is being

---

1. 11 U.S.C. § 507 provides in pertinent part:
   (a) The following ... claims have priority in the following order:
   . . .
   (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

   . . .
   (E) an excise tax on—
   . . .
   (ii) ... a transaction occurring during the three years immediately preceding the date of the filing of the petition.

paid on a lessor [sic] wage pending finality of Average Monthly Wage." On November 22, 1991, the Commission sent a letter stating that it had paid compensation to Sandry from the Special Fund; that the DeRoches' current liability to the Fund totaled $4,037.65 (including a penalty of $500.00); and that "additional amounts may become payable in the future." On December 10, 1991, the Commission sent a notice of a "Continuing Award" stating that it was now assessing the DeRoches a total of $6,502.83 (including a penalty of $591.16), payable to the Fund.

On December 13, 1991, acting pro se, the DeRoches requested a hearing before the Commission, challenging its acceptance of Sandry's claim for compensation. They contended that Sandry was a "subcontractor" rather than an employee while working at Desert Auto (and hence not covered by workers' compensation), and, further, that Sandry had been injured before working at Desert Auto. On April 14, 1994, an Administrative Law Judge held on the merits that Sandry was entitled to workers' compensation, and that the DeRoches were liable for all the compensation paid by the Special Fund to date, plus penalties and interest.

On May 24, 1994, the Commission sent the DeRoches a notice of a "Supplemental Continuing Award," now totaling $20,541.82 (including a penalty of $1,867.44). This "Supplemental Continuing Award" was an assessment for a cumulative total that included the amount specified in the "Continuing Award" notice sent to the DeRoches on December 10, 1991. The DeRoches protested the "Supplemental Continuing Award" on June 3, 1994, and requested a hearing before the Commission.

A hearing was scheduled for November 29, 1994. However, on November 28, the day before the scheduled hearing, the DeRoches filed for Chapter 7 bankruptcy, and they did not appear for their hearing the next day. On November 30, an Administrative Law Judge dismissed the DeRoches' request for a hearing because of their failure to appear, and "deemed final" the "Supplemental Continuing Award" of May 24.

The Commission filed a "Proof of Claim" in the bankruptcy court for $22,421.52. This amount appears to have been the then-current cumulative total of the compensation the Special Fund had paid to Sandry, plus penalties and interest. The DeRoches were subsequently sent additional assessments for "Continuing Awards" in increasingly higher amounts, as compensation continued to be paid to Sandry out of the Special Fund. So far as appears from the record, the DeRoches have never paid any reimbursement to the Fund.

The DeRoches objected to the Commission's claim in the bankruptcy court, contending that their liability to the Fund was not an "excise tax" within the meaning of 11 U.S.C. § 507(a)(8)(E)(ii), and that it was therefore dischargeable. The bankruptcy court agreed. While the decision of the bankruptcy court was on appeal, we held in *In re Camilli* that reimbursement of the Arizona Special Fund by an uninsured employer is indeed an "excise tax." On remand to the bankruptcy court in light of *In re Camilli*, the DeRoches continued to object to the Commission's claim, now on the alternate ground that the excise tax in their case was subject to discharge because it was based on a "transaction" that had occurred more than three years before the date of their bankruptcy petition.

On summary judgment, the bankruptcy court disagreed with the DeRoches, holding that "each separate supplement and continuing award is a 'transaction.'" Because notices of award had been sent to

the DeRoches within three years of their bankruptcy filing, the bankruptcy court concluded that the Commission's claim was non-dischargeable. Under the holding of the bankruptcy court, the amount assessed in the most recent award issued by the Commission is non-dischargeable, even though that amount is a cumulative running total that includes payments made by the Special Fund more than three years before the petition. The district court affirmed.

■■■ We have appellate jurisdiction pursuant to 28 U.S.C. § 158(d). When reviewing a district court's decision on appeal from a bankruptcy court, we apply the same standard of review applied by the district court. *See Parker v. Community First Bank (In re Bakersfield Westar Ambulance, Inc.)*, 123 F.3d 1243, 1245 (9th Cir.1997). We therefore review *de novo* the summary judgment of the bankruptcy court. *See id.*

We reverse and remand.

## II

■■■ The issue in this case is what constitutes the "transaction" underlying the "excise tax" owed to the Arizona Special Fund. The issue is difficult because liability to a state fund for reimbursement of payments made to an injured employee is an unusual excise tax. More typical excise taxes are, for example, taxes on the sale of cigarettes or license taxes. *See Black's Law Dictionary* 585 (7th ed.1999) (defining "excise tax" as a "tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)"). For such typical excise taxes, the "transaction" underly-

ing the tax is obvious. It is a discrete act by the person or entity being taxed—for example, the sale of cigarettes or the application for a license.

The "transaction" in a workers' compensation case is less obvious. There are a number of events that, taken together, result in the ultimate assessment of the "excise tax" by the Special Fund. First, the employer must fail to carry workers' compensation insurance. Second, an employee must be injured. Third, the employee must make a claim for workers' compensation. Fourth, the Commission must make a determination that the worker is entitled to compensation. Fifth, the Fund must pay compensation to the injured worker. Finally, the Fund must assess the employer for reimbursement of the compensation paid to the worker. The assessment for reimbursement to the Fund, which comes at the end of this sequence of events, is the "excise tax" in question.

The Commission agrees with the result reached by the bankruptcy court. It successfully argued in the bankruptcy and district court, and argues in its brief to us, that each assessment by means of a notice of award, including each supplemental and continuing award, is a "transaction." Under this view, such an assessment is a "transaction" with respect to the entire amount of liability specified, even if the amount assessed is a cumulative total that includes compensation paid by the Special Fund more than three years before the petition. If this view is correct, no amount owed to the Fund before filing will ever be dischargeable because of the Commission's practice of making periodic assessments that are a cumulative running total of all amounts owed to the Fund.[2] Indeed, if the

---

**2.** In its petition for rehearing and for rehearing en banc, the Commission contends that it abandoned this position at oral argument, and that it "informed the Panel that only those portions of continuing awards relating to assessments and payments made within

Commission is correct that the relevant "transaction" is the assessment of an amount owed, no amount owed to the Fund *after* filing will be dischargeable either, for any assessment by the Fund after filing will necessarily have been made after the critical date of three years before the filing.

The DeRoches argue that the "transaction" was the Commission's acceptance of Sandry's claim for workers' compensation on October 3, 1991. Alternatively, they argue that the "transactions" were the Commission's determinations of Sandry's wage rate on October 24 and November 4, 1991. The dates for all of these "transactions" are more than three years earlier than the date on which the DeRoches filed their petition in bankruptcy. If the DeRoches are right, all amounts owed to the Fund, including those based on payments made less than three years before the petition, are dischargeable.

For two reasons, we disagree with the Commission's argument that the transaction is the assessment of the tax. First, it would be odd to construe the word "transaction" in the phrase "an excise tax on a transaction" to refer to the act of the Commission in assessing the excise tax. A transaction giving rise to a tax is ordinarily an act external to the taxing authority. But under the Commission's definition, the transaction giving rise to the tax is the very act of assessing that tax. A tax on a tax is the fabled ultimate dream of a taxing authority, but we know (or hope we know) that this is a fable.

■ Second, a fundamental characteristic of a typical excise tax is that it is a discrete, one-time tax based on a single act by the person or entity taxed, such as a sale or an application for a license. A person cannot avoid owing a typical excise tax arising out of a past act, for the act has already occurred. But he or she can avoid owing a future tax by the simple expedient of refraining from an act that would give rise to the tax. This characteristic of a typical excise tax is important to an understanding what Congress intended in § 507(a)(8)(E)(ii). If the Commission is right, the excise tax at issue in this case can never be avoided. Once a worker is injured during a period when the employer does not carry insurance for that worker, the employer is faced with an excise tax that is assessed into the indefinite future regardless of what the employer does. The only act over which the employer had any control was to carry insurance when the worker was injured. There is no act that the employer can now perform (or avoid performing) to avoid future assessments. Indeed, if the worker is permanently disabled, the employer is faced with a non-dischargeable, continually accruing debt for as long as the worker lives.

three years of the bankruptcy petition date should be held non-dischargeable pursuant to 11 U.S.C. § 507(a)(8)(E)(ii), and that those portions relating to periods outside the three years are dischargeable." In its petition, it contends that our "misunderstanding of the Commission's argument erroneously contributed to [our] decision."

We have reviewed the transcript of the oral argument. The Commission may indeed have intended to abandon its earlier position, and some of its statements are consistent with that intent. But we note that the attorney for the Commission also stated, "In the case at hand, all of the periods, regardless of which argument, whether you buy debtors' argument or you buy our argument, are within the three years." This statement can be true only on a theory of a continuing award, for the Commission's first assessment was contained in a letter sent to the DeRoches on November 22, 1991, outside the three-year period of non-dischargeability. Whether or not the commission abandoned its previous position, however, is not material. We disagree with that position, and we would reach the same decision in this case irrespective of whether the Commission continued to adhere to it.

We also disagree with the DeRoches, for the first of the reasons we give for disagreeing with the Commission. All of the "transactions" proposed by the DeRoches are acts by the Commission—its acceptance of Sandry's claim for compensation, and its two determinations of Sandry's wage rate. None of these transactions is an act (or failure to act) by the tax-payer.

■ We believe that the most faithful reading of the text, as well as the best understanding of the structure of the Bankruptcy Act, is to construe "transaction" as follows in the context of Arizona's workers' compensation scheme [3]: As used in § 507(a)(8)(E)(ii), a "transaction" is the act of employing a worker without carrying the required insurance when the worker is injured. The date of the transaction is the date on which the worker is injured.

Our reading of the statute avoids a result that could, in some cases, be too severe in relationship to an employer's behavior. The DeRoches have violated Arizona law in not carrying workers' compensation insurance, but their violation may have been due to a good faith mistake of law or fact. The DeRoches contended before the Commission that Sandry was an independent contractor rather than an employee, and that, in any event, he was injured before he began working for them. If they had been right in their first contention, they would have had no obligation to carry workers' compensation insurance at all. If they had been right in their second contention, they would have had an obligation to carry insurance; but Sandry would not have been entitled to compensation for his claimed injury, and the Special Fund would therefore have not made any payments that for which they would have had to reimburse. As it turned out, the Commission found that Sandry was an employee injured during the course of his employment. It did not find, however, that the DeRoches had acted unreasonably or in bad faith. It is possible that they did so act, but because such a finding was unnecessary to the Commission's decision, we do not know that they did.

We recognize that our holding allows employers like the DeRoches to discharge their liability simply by waiting three years after the date of their employee's injury and then filing for bankruptcy. This may be an undesirable result, particularly in cases where an employer knowingly fails to carry workers' compensation insurance for someone who is clearly an employee. But our holding only puts the DeRoches on a par with taxpayers who owe more typical excise taxes. Such taxpayers may also discharge their liability by waiting three years after the transaction giving rise to the tax and then filing for bankruptcy.

### III

Because Sandry was injured during a time when the DeRoches did not carry workers' compensation insurance on a date more than three years before the date they filed for bankruptcy, the DeRoches' excise tax debt to the Commission is dischargeable. We therefore REVERSE the decision of the district court and REMAND for further proceedings not inconsistent with this opinion.

---

**3.** We limit our holding to workers' compensation as it operates in Arizona. Other states handle workers' compensation in different ways. Whether those states' workers' compensation schemes warrant different treatment under 507(a)(8)(E)(ii) is a question that is not before us today.