In re LORBER INDUSTRIES OF
CALIFORNIA, Debtor.

California Self–Insurers' Security
Fund, Appellant/Cross–
Appellee,

v.

Lorber Industries of California,
Appellee/Cross–Appellant,

v.

Official Committee of Unsecured
Creditors, Appellee/Cross–
Appellee.

BAP Nos. CC–06–1374–BPaMk,
CC–06–1395–BPaMk.
Bankruptcy No. LA 06–10399 TD.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on May 17, 2007.

Filed July 16, 2007.

Louis J. Cisz, III, Thelen Reid Brown Raysman & Steiner LLP, San Francisco, CA, for California Self-Insurers' Security Fund.

David M. Poitras, Jeffer, Mangels, Smiley, Wang, Ekvall & Strok, Costa Mesa, CA, for Lorber Industries of California.

Before: BRANDT, PAPPAS and MARKELL,[1] Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Post-petition, the chapter 11[2] debtor, which had self-insured its state statutory

---

1. Hon. Bruce A. Markell, Bankruptcy Judge for the District of Nevada, sitting by designation.

2. Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as amended by the Bankruptcy Abuse Prevention

workers' compensation obligations, defaulted on those obligations. The state fund established by statute to make the defaulting debtor's compensation payments objected to the debtor's plan, arguing that its claim was entitled to priority as an excise tax under § 507(a)(8)(E). The bankruptcy court overruled the objection, concluding that the debtor's reimbursement obligation was an excise tax, but that the transaction date was when the debtor was granted self-insured status, more than a decade pre-petition. The fund appealed the denial of priority, and the debtor cross-appealed the determination that the obligation was an excise tax.

Our analysis differs from the bankruptcy court's: we agree that the debtor's duty to reimburse the fund is an excise tax, but hold that the event which gives rise to the fund's obligation to make compensation payments to injured workers is the transaction on which it is imposed. Here, that was the debtor's post-petition default, outside of the three year pre-petition period for which the Code grants priority for excise taxes. We AFFIRM.

## I. FACTS

The facts are not contested. Lorber Industries of California ("Lorber") is a California corporation which was in the textile manufacturing business. CLC § 3700 *et seq.* requires that an employer either self-insure or purchase insurance from a private insurer. The statute empowers the California Self–Insurers' Security Fund ("Fund") to bring an action against any person to recover for compensation paid and liability assumed by the Fund, and to take legal action against others to recover money it expends in making

or continuing an insolvent self-insurer's compensation payments. *See Self–Insurers' Sec. Fund v. ESIS, Inc.,* 204 Cal. App.3d 1148, 251 Cal.Rptr. 693 (Cal.Ct. App.1988). The bankruptcy court ably summarized the statutory scheme in its published memorandum of decision, 357 B.R. 617 (Bankr.C.D.Cal.2006), so it need not be repeated here.

1. *Self–Insurance.* The California Director of Industrial Relations ("Director") approved Lorber in 1992 to self-insure its workers' compensation obligations. *See* CLC § 3701. Lorber posted a letter of credit as security for payment of future liability for workers' compensation benefits and for legal and attendant administrative costs. CLC §§ 3701 and 3744(a).

2. *The Petition and Proofs of Claim.* Lorber filed for chapter 11 protection on 10 February 2006, and then filed an emergency motion to pay pre-petition workers' compensation claims and to retain a pre-petition bank account for that purpose. The bankruptcy court granted the motion, authorizing Lorber:

2 .... to maintain and continue the Workers' Comp Program, including the payment of claims of injured employees in accordance therewith (with such payments not to exceed $1 million in the aggregate); and

3 .... to continue using its pre-petition Workers' Comp Program bank account at U.S. Bank for the purposes of administering the Workers' Comp Program.

Order Authorizing Debtor To Pay Prepetition Workers' Compensation Claims ..., 22 February 2006.

and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "FRCP" references are to the Federal Rules of Civil Procedure. "CLC" refers to the California Labor Code.

Lorber paid its claims while operating post-petition, but ceased operating and defaulted on its self-insurance obligations after about three months, becoming an "insolvent self-insurer." CLC § 3741(c). As indicated in the Director's 28 April 2006 letter, Exhibit A to the Fund's amended proof of claim:

Lorber Industries of California was self-insured ... from July 1, 1992 through its closure of operations on May 1, 2006.... [I]t would cease operations on May 1, 2006 and default on [its] existing workers' compensation liabilities.... [Lorber] has fallen under the provisions of Labor Code 3701.5, and its remaining self-insured workers' compensation liabilities will need to be taken over by the Self Insurers Security Fund.

The Fund "assume[d] the workers' compensation obligations of [Lorber as] an insolvent self-insurer" under CLC § 3743. *Lorber,* 357 B.R. at 623. Only then did the Fund pursue its right to draw on Lorber's security—the letter of credit—under § 3701.5(c), and on 9 May 2006 filed a proof of claim seeking reimbursement for workers' compensation obligations arising from pre-petition injuries suffered by Lorber's employees or former employees. The claim is for the amounts the Fund expects to pay to workers injured during the three years pre-petition, to the extent that sum exceeds the letter of credit, in an unknown amount. The Fund filed an amended proof of claim on 25 October 2006, asserting a net priority claim in the amount of its estimated future liability for assumed claims and related expenses after application of the security.

3. *The Plan and the Fund's Objection.* Lorber's first amended plan treats the Fund's claim as a general unsecured claim. The Fund objected to confirmation, arguing that its claim is for an excise tax

entitled to priority under § 507(a)(8)(E)(ii). That section provides:

(a) The following expenses and claims have priority in the following order:

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(E) an excise tax on—

. . .

(ii) ... a transaction occurring during the three years immediately preceding the date of the filing of the petition[.]

The bankruptcy court issued its decision after a contested hearing. The court engaged in a two-step analysis, considering first whether the Fund's claim could be classified as an excise tax. The bankruptcy court initially applied the four-part test of *In re Lorber Indus. of California, Inc.,* 675 F.2d 1062, 1066 (9th Cir.1982), and the additional test from *In re George,* 361 F.3d 1157 (9th Cir.2004), concluding the claim met the criteria for an excise tax. *Lorber,* 357 B.R. at 623.

The second issue was when the transaction occurred. The bankruptcy court held that the critical event was the date the debtor was granted self-insured status:

Thus, under the logic of *George,* it seems that the relevant transaction in this case would be when the Debtor applied for and was granted self-insured status. Because this occurred in 1992, the Fund's claim would not fall within the 'three years immediately preceding the date of filing of the petition.'

*Id.* at 624. The bankruptcy court overruled the Fund's objection, entering its order on 27 October 2006. The Fund timely appealed the order on the transaction issue (No. CC–06–1371) and Lorber timely cross-appealed the order on the excise tax issue (No. CC–06–1395). We heard both in a single argument.

Meanwhile, Lorber's first amended plan had been confirmed by order entered 23 October 2006, with an effective date of 16 March 2007. We granted a limited stay pending these appeals, precluding payment of claims junior to priority claims.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334(b) and § 157(b)(1) and (2)(B) and (L), and we do under 28 U.S.C. § 158(a)(1) and (c).

## III. ISSUES

A. Whether the plan confirmation moots this appeal;

B. Whether, under § 507(a)(8)(E)(ii), the Fund's claim is an "excise tax"; and, if so,

C. What was the "transaction date"?

## IV. STANDARD OF REVIEW

■ We review conclusions of law, including the bankruptcy court's interpretation of the Code, de novo. *In re Staffer,* 262 B.R. 80, 82 (9th Cir. BAP 2001), *aff'd,* 306 F.3d 967 (9th Cir.2002); *In re Pardee,* 218 B.R. 916, 919 (9th Cir. BAP 1998), *aff'd,* 193 F.3d 1083 (9th Cir.1999).

## V. DISCUSSION

A. *Mootness?*

■ Lorber argues in its reply brief that this appeal is moot, as a liquidating plan has been confirmed and the effective date has passed. The Fund filed a motion for limited stay pending appeal, which the bankruptcy court denied. But on 22 March 2007 we granted a temporary stay, providing in part:

A temporary stay of distributions to any creditors junior in priority to claims under 11 U.S.C. § 507(a)(8) is hereby ORDERED GRANTED in order to maintain the status quo while the Panel considers the appellant's motion for stay pending appeal and the opposition that appellee has indicated it intends to file.

The temporary stay remains in effect.

Further, the bankruptcy court's docket indicates that on 25 April 2007 the parties (along with the Liquidating Trustee) stipulated that:

(i) even if the Fund prevails in the pending appeal, ... only the lesser of 10% of such claim or $250,000 will be treated as a priority claim under the Plan; [and]

(ii) the balance of any allowed claim will be treated as a general unsecured claim under the Plan[.]

Notice of Motion and Motion for Order Approving Stipulation ... 2:15–19. The bankruptcy court approved the stipulation on 24 May 2007.

Accordingly, since our decision might affect creditor distributions under the plan, the appeal is not moot.

B. *Excise Tax?*

We begin with the cross appeal: is the Fund's claim for an "excise tax"? The Code grants eighth-tier priority status to allowed unsecured claims of governmental units for excise taxes on transactions occurring during the three years immediately preceding date of bankruptcy petition filing. § 507(a)(8)(E).

■ The Code does not define "excise tax," and state law labels are not binding in the determination. *In re Camilli,* 94 F.3d 1330, 1331 (9th Cir.1996). Rather, whether a government exaction is a tax for bankruptcy priority purposes is a matter of federal law, and the court is to engage in a functional examination. *See City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941). Further, § 507 priority is to be strictly construed:

the Supreme Court recently held that premiums owed by an employer to a workers' compensation carrier do not fit within § 507(a)(5) (for contributions to an employee benefit plan), noting that "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Delivery Service, Inc. v. Zurich American Ins. Co.,* —— U.S. ——, 126 S.Ct. 2105, 2109, 165 L.Ed.2d 110 (2006) (citation omitted).

■ *Lorber,* 675 F.2d 1062, decided under the Bankruptcy Act,[3] is the beginning point of this analysis: the Ninth Circuit held that charges for sewer services were "user fees," not excise taxes, and adopted a four-part test to determine whether a governmental exaction is a tax. For bankruptcy purposes, an excise tax is:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

*Id.* at 1066.

■ Each of the four *Lorber* elements is met here. All California employers must either insure or self-insure their workers' compensation obligations, and they must participate in the system. CLC § 3700 and 3701. The legislature imposed the mandate for the public purpose of ensuring that employees are adequately insured by a solvent company. *See Tucci v. Club Mediterranee, S.A.,* 89 Cal.App.4th 180, 107 Cal.Rptr.2d 401, 408 (2001). The state's authority for the scheme is express-ly derived from its police power. CLC § 3201.

But that does not end the inquiry: in *Camilli,* the Ninth Circuit looked to CLC § 3717(a), which applies to uninsured employers, and followed the Sixth Circuit's analysis in its two *In re Suburban Motor Freight* cases, 998 F.2d 338 (6th Cir.1993) and 36 F.3d 484, 488 (6th Cir.1994). Those cases examined the differences between premium payments due from subscribers and reimbursement obligations arising in connection with a selfinsurer's failure to pay claims, finding the former was an excise tax and the latter (because it was not the sole source of compensation) was not. The court found that a claim by the Arizona fund *was* an excise tax under § 507, because the Arizona fund carries its statutory burden alone: "there are no private creditors with claims similar to [the Arizona fund's]. . . ." *Camilli,* 94 F.3d at 1334.

*George* came along several years later. The Georges were California employers whose employee was injured on the first day of his job. Because the Georges were not self-insured, and failed to purchase workers' compensation insurance, the employee's injury was not covered. The injured employee had already been compensated by the California Uninsured Employers Fund, which filed a priority claim for excise tax under § 507 in the Georges' chapter 7 bankruptcy. The *George* court distinguished *Camilli,* and held that, because under the Arizona scheme only the *last* employer of the injured worker has liability, while the California Fund was not the sole source of compensation for a cumulatively injured worker, *Camilli* did not control. *George,* 361 F.3d at 1162–1163.

---

**3.** Repealed by Bankruptcy Reform Act of 1978, P.L. 95–598 (Nov. 6, 1978), which re-placed the Bankruptcy Act with the Bankruptcy Code.

Also, *George* added an additional "hypothetical creditor" requirement to the *Lorber* test, and held that

> if a creditor similarly situated to the government can be hypothesized under the relevant statute, then by the reasoning of *Camilli*, the government claim is not a tax. Under the California scheme [CLC § 3717], another employer could have a competing claim against the uninsured employer if the worker has suffered a cumulative injury.

*Id.* at 1162 (footnote omitted). Other jurisdictions have held that mandatory "contributions" to state workers' or unemployment compensation funds are entitled to excise tax priority. *See In re Olga Coal Co.*, 194 B.R. 741, 746–48 (Bankr.S.D.N.Y. 1996) and cases cited therein including *In re Chateaugay Corp.*, 177 B.R. 176, 181 (S.D.N.Y.1995), *aff'd*, 89 F.3d 942 (2d Cir. 1996). *See also Matter of Pierce*, 935 F.2d 709, 711 (5th Cir.1991); *In re William Akers, Jr., Co.*, 121 F.2d 846 (3d Cir.1941); *In re Nail*, 163 B.R. 105 (Bankr.E.D.Mich. 1994); *In re Continental Minerals Corp.*, 132 B.R. 757, 759 (Bankr.D.Nev.1991); *In re Ndosi*, 116 B.R. 687, 689 n. 1 (Bankr. D.Minn.1990), *aff'd*, 950 F.2d 1376 (8th Cir. 1991).

Here the statute provides no express exclusion for claims of cumulative injury, and the Fund must pay the entire claim. CLC § 3743. There can be no hypothetical creditor with a similar claim. Lorber's argument that its letter of credit issuer is one is inapt: the issuer is not obligated to pay injured workers, its liability is contractual, not statutory, and the Fund's claim is only for the excess over the letter of credit proceeds. The fifth prong in *George* is met, as well as the four *Lorber* elements.

We will AFFIRM in the cross-appeal: the Fund's claim is for an excise tax.

*C. When did the "transaction" occur?*

■ Only excise taxes on transactions occurring within the three years before the petition date are entitled to priority under § 507(a)(8)(E)(ii), so we must still consider the merits of the Fund's appeal: when did the "transaction" occur? This issue was not raised by the parties in their briefs before the bankruptcy court or contested at hearing, except in a brief exchange with the court. *See* Transcript, 29 August 2006, at 30:9–18.

The answer determines the extent to which, if any, the Fund's claim has priority. The bankruptcy court, construing *George*, concluded that the operative transaction was the Director's approval in 1992 of Lorber's application to self-insure. We do not so construe *George*. The Ninth Circuit held:

> The Trust Fund claim against the Georges was not an exaction "on a transaction" the Georges made. Their only relevant transaction was hiring the employee who got injured, but hiring does not occasion a Trust Fund claim in California, and neither does an employee injury. *What occasions such a claim is the failure to make the transaction* of purchasing workers' compensation insurance (or applying for self-insured status). It is hard to squeeze the absence of a transaction, which triggers California Trust Fund liability, into the bankruptcy statute requirement of "a transaction occurring during" the three years preceding bankruptcy.

*George*, 361 F.3d at 1163 (emphasis added).

The Fund argues the "transaction(s)" in this case were the dates of pre-petition injuries which occurred within three years of filing. In *In re DeRoche*, 287 F.3d 751 (9th Cir.2002), the Ninth Circuit interpreted the rights of the Special Fund maintained by the Industrial Commission of Arizona as triggered when an employer

fails to insure. DeRoche was a chapter 7 debtor who failed to carry workers' compensation insurance. *DeRoche* held that

> [a]s used in § 507(a)(8)(E)(ii), a "transaction" is the act of employing a worker *without carrying the required insurance when the worker is injured. The date of the transaction is the date on which the worker is injured.*

*Id.* at 757 (emphasis added). The Circuit expressly limited its holding to Arizona's statutory scheme, but reserved the possibility that it could apply elsewhere. *Id.* at 757 n. 3.

Later that year, in *In re Bliemeister*, 296 F.3d 858 (9th Cir.2002), the debtor, an Arizona employer, had an employee who was injured in 1993. Bliemeister had no workers' compensation insurance at the time. She filed a chapter 7 petition in 1998, approximately five years later, and the issue was when the transaction occurred. The Ninth Circuit cited *DeRoche* and held that the Arizona fund's claim for its payment for the injury, which had occurred more than three years pre-petition, was not entitled to priority under § 507(a)(8)(E)(ii).

The problem with the Fund's theory in this appeal, that the workers' injury dates are the transaction dates, is that the facts here differ: Lorber filed its chapter 11 on 10 February 2006, but did not default on self-insurance until 26 April 2006, about two and a half months *post-petition*, and it ceased operation a few days thereafter. Lorber *was* self-insured when the injuries occurred, and the Fund did not then become liable to the injured employees.

Under *Bliemeister*, the "transaction" was employing a worker without carrying the required insurance when the worker was injured. That's when the debtor defaulted and the Arizona fund's obligation to pay on the worker's claim arose. And *George* teaches that the failure to obtain

insurance—by analogy here, the end of Lorber's approved self-insured status—is not a "transaction." Here, if there was a "transaction," it was post-petition. In this case the Fund's claim is not entitled to § 507(a)(8)(E) priority because at all times when Lorber was in operation and employing workers, including the three years preceding its bankruptcy petition, it *was* self-insured.

■ The Fund became obligated to make compensation payments to Lorber's injured workers only when Lorber was no longer self-insured. The distilled message of the authorities is that the "transaction" giving rise to an excise tax in the workers' compensation arena is the event occasioning the Fund's (or an equivalent agency's) statutory obligation to make or continue compensation payments to the defaulting self-insurer's (or uninsured employer's) injured workers. We are mindful that § 507 priority is to be strictly construed, and we cannot find that priority treatment as an excise tax is authorized here. *See Howard Delivery Service, Inc.*, 126 S.Ct. at 2109.

We also note that the Fund's claim might be entitled to priority status as an administrative expense under § 507(a)(2), but the Fund did not pursue this avenue, it has not been briefed, and there is the parties' post-appeal stipulation to consider. *See In re United Healthcare System, Inc.*, 396 F.3d 247, 249 n. 3 (3d Cir.2005). Accordingly, we express no view on that possibility.

## VI. CONCLUSION

This appeal is not moot, because of the stay on distributions under the confirmed plan.

We reach the same result as the bankruptcy court by a different path, but we may affirm on any ground supported by the record. *Tahoe Sierra Preservation*

*Council, Inc. v. Tahoe Regional Planning Agency,* 322 F.3d 1064, 1077 (9th Cir.2003).

The Fund's claim is not entitled to priority under § 507(a)(8)(E). We AFFIRM.