**Juan A. QUIROZ, Appellant,**

v.

**State of MICHIGAN, DEPARTMENT OF TREASURY, Appellee.**

Civil Action No. 11–CV–12672.
Bankruptcy No. 11–04433.

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 2012.

Leon N. Mayer, Ryan D. Heilman, Schafer & Weiner, Bloomfield Hills, MI, for Appellant.

Heather L. Donald, Juandisha M. Harris, Michigan Department of Attorney General, Detroit, MI, for Appellee.

*OPINION AND ORDER AFFIRMING THE ORDER OF THE BANK-RUPTCY COURT GRANTING AP-PELLEE'S MOTION TO DISMISS*

MARK A. GOLDSMITH, District Judge.

## I. INTRODUCTION

This is a bankruptcy appeal. The sole issue is whether a corporation's unpaid Michigan single business tax ("SBT"), for which Appellant Juan A. Quiroz is liable as the responsible corporate official, is non-dischargeable under 11 U.S.C. §§ 507(a)(8)(E) and 523(a)(1)(A). The Bankruptcy Court for the Eastern District of Michigan determined that the obligation is not dischargeable. For the reasons that follow, the Court agrees and, accordingly, affirms the Bankruptcy Court's order granting the motion of Appellee Michigan Department of Treasury to dismiss the adversary proceeding.

## II. BACKGROUND

The relevant facts are undisputed. Quiroz was the sole owner of Industrial Waste Cleanup, Inc. ("IWC") and a corporate officer with responsibility for the tax filings and tax payments of the company.[1] IWC ceased operating in 2006, at which time it

---

1. Quiroz affirmatively stated in the complaint he filed in connection with the adversary proceeding that he was the sole owner of IWC. In the briefing filed in the Bankruptcy Court and in this Court, Quiroz did not dispute the Treasury Department's assertion that Quiroz was also a corporate officer, nor did he raise any issue in either court that he is not a corporate official responsible for non-payment of IWC's taxes, pursuant to Mich. Comp. Laws § 205.27a(5). Thus, the Court concludes that the parties agree that he is such a responsible corporate official within the meaning of that statute.

owed the State of Michigan approximately $25,450 in unpaid SBT for the years 2005 and 2006.

In 2008, Quiroz and his wife filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code and were granted a discharge under that Chapter. Despite the discharge order, the Michigan Department of Treasury sought to collect from Quiroz, personally, IWC's unpaid SBT under a Michigan statute that renders corporate officers and other business-entity officials with control over tax filings and tax payments personally liable for unpaid state taxes in the event they are not paid by the business-entity taxpayer. *See* Mich. Comp. Laws § 205.27a(5). Insisting that his liability for the unpaid SBT was discharged in bankruptcy, Quiroz filed an adversary proceeding in the Bankruptcy Court for a determination of that issue. The Michigan Department of Treasury filed a motion to dismiss, arguing that the SBT qualifies as an excise tax that is excepted from the priority listing of taxes in § 507(a)(8)(E)(i) and thus not dischargeable under § 523(a)(1)(A). The Bankruptcy Court agreed and granted the motion. Quiroz appeals.

### III. STANDARD OF REVIEW

The Bankruptcy Court's findings of fact are reviewed for clear error; its conclusions of law are reviewed *de novo*. *In re United Producers, Inc.*, 526 F.3d 942, 946 (6th Cir.2008). Because the issue in this case is one of statutory construction, the Court reviews the matter *de novo*. *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir.2005).

### IV. ANALYSIS

Quiroz asserts two arguments in support of reversal. The first is that the SBT does not satisfy the requirements of § 507(a)(8)(E)(i) because, according to Qui-roz, only an excise tax on a particular transaction comes within that provision, and the SBT is not a tax traceable to a particular transaction. Second, Quiroz argues that even if the SBT meets the requirements of that provision as to IWC, his obligation is nonetheless dischargeable, on the theory that only a tax liability for which the debtor is principally liable—and here Quiroz is only derivatively liable—is nondischargeable. The Court addresses both arguments, in turn.

### A. "On A Transaction"

The Bankruptcy Code excepts from the discharge of an individual debtor "any debt ... for a tax ... of the kind and for the periods specified in section ... 507(a)(8)." 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8) lists various claims of governmental units, including the following pertinent language:

> [A]llowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> > (E) an excise tax on—
> >
> > > (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
> > >
> > > (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(E).

Quiroz does not dispute in his appeal that the SBT is an "excise tax," nor could he. While the Bankruptcy Code does not define the term, case law has recognized its broad scope, as confirmed by the following expansive definition adopted by numerous courts:

> A tax imposed on the performance of an act, the engaging in an occupation, or

the enjoyment of a privilege. A tax on the manufacture, sale, or use of goods or on the carrying on of an occupation or activity, or a tax on the transfer of property. In current usage the term has been extended to include various license fees and practically every internal revenue tax except the income tax.

Black's Law Dictionary 563 (6th ed. 1990). *See In re National Steel Corp.,* 321 B.R. 901, 908 (Bankr.N.D.Ill.2005) (collecting cases).

Michigan's SBT meets this definition of an "excise" tax because it is an indirect tax based on business activity—a tax that the United States Supreme Court has characterized as a value-added tax. *Trinova Corp. v. Mich. Dep't of Treasury,* 498 U.S. 358, 362, 111 S.Ct. 818, 112 L.Ed.2d 884 (1991). In *Trinova,* the Supreme Court explained the operation of the tax in the course of finding that it did not offend the Constitution's Due Process Clause or Commerce Clause. The Court observed that the tax is triggered by "business activity," broadly defined as any "transfer of ... property ... or the performance of services," Mich. Comp. Laws § 208.3, and levied on a tax base consisting generally of the costs of labor + depreciation + interest + profit, subject to a multitude of adjustments. 498 U.S. at 367, 111 S.Ct. 818. In this case, the parties do not dispute that such a tax constitutes an indirect tax and qualifies as an "excise tax" within the meaning of the Bankruptcy Code.

Where the parties disagree is over the significance in the statute of the phrase "on a transaction." Quiroz argues that the phrase "on a transaction" evinces a Congressional intent to "directly tie[ ] the tax to a specific transaction." Appellant's Br. at 11 (emphasis in original). Quiroz contends that the SBT does not tax any particular transaction, but rather combines unrelated activities—such as federal in-

come tax liability, capital cost adjustments, compensation and a variety of deductions and exemptions—so that "not even a series of transactions ... are being taxed." *Id.* at 11–12. By contrast, the Michigan Department of Treasury argues that the phrase "on a transaction" should be viewed broadly as encompassing a tax that includes a variety of transactions, and that it is irrelevant that the tax is not confined to a particular transaction. Appellee's Br. at 12.

Quiroz relies principally on *In re Albion Health Services,* 339 B.R. 171 (Bankr. W.D.Mich.2006), where the bankruptcy court analyzed § 507(a)(8)(E) relative to a State of Michigan reimbursement-demand made to a hospital for the state's payment of unemployment compensation benefits to the hospital's former employees. The bankruptcy court held that the reimbursement-demands were not a "tax" within the meaning of § 507(a)(8), but then stated, in the alternative, that even if they were a tax, the demands were not entitled to nondischargeability treatment because there was simply no "transaction" associated with them. *Id.* at 177–180.

This Court concludes that *Albion Health* offers little guidance here. The demands for unemployment reimbursement analyzed there are not at all analogous to the SBT at issue here. In *Albion Health,* the court found that there was no transaction at all associated with the demands, noting in particular that the hospital was not a party to anything that could be considered a transaction and had not received or paid any of the benefits that were the subject of the dealings between the state and the former hospital employees. By contrast, in the present case, IWC, as a generator of business activity, was a party to the business transactions—such as receipt of revenues and payment of compensation—that gave rise to its SBT liability; and it also

directly received the benefit of such transactions. At most, *Albion Health* stands for the proposition that § 507(a)(8)(E) can have no application where the purported tax has no connection to *any* transaction involving the alleged taxpayer. However, it does not address the present context where the SBT undisputedly relates to, at least, *some* transactions involving the taxpayer.

Similarly, Quiroz's citation to *In re DeRoche*, 287 F.3d 751 (9th Cir.2001), misses the mark. In that case, the Ninth Circuit addressed the "transaction" concept in the context of an employer who had failed to carry workers compensation insurance and was later the subject of assessments by the state fund that paid the injured employee. The court held that these assessments were an "excise tax," and that the relevant "transaction" was the employer's failure to obtain insurance. Quiroz purports to find support in a statement the court made when it rejected the state's contention that the "transaction" should be deemed to be the on-going assessments by the state of the amount owed, rather than the employer's failure to purchase insurance. It was in that context that the court stated that "a fundamental characteristic of a typical excise tax is that it is a discrete, one-time tax based on a single act by the person or entity taxed, such as a sale of an application for a license." *Id.* at 756. For that reason, the court rejected the state's position that each assessment by the state constituted a "transaction" and held that the employer's failure to insure constituted the "transaction."

*DeRoche* offers no meaningful support for Quiroz. Notably, the context of the case, and its specific holding regarding workers compensation assessments, do not speak to the question in this case regarding a tax that unquestionably relates to business activities, at least some of which

constitute transactions. Further, the specific statement on which Quiroz relies was offered to refute the state's position that each assessment by it constituted the transaction, based on the reasoning that an excise tax relates to a past event, not future events by some other entity over which the taxpayer would have no control. Thus, the context in which the court spoke about a an excise tax as typically "based on a single act" is entirely different from the present context.

*In re Templar*, 170 B.R. 562 (Bankr. M.D.Pa.1994), another case cited by Quiroz, provides no support for his position. In that case, the court held that an occupation tax was an "excise tax" under the forerunner to § 507(a)(8)(E), but was dischargeable because it did not relate to any transaction. Even assuming that the decision was correctly decided, the present case is distinguishable because the SBT does relate to some transactions, even if not tied exclusively to any particular one.

By contrast, the Michigan Department of Treasury cites *National Steel Corporation*, 321 B.R. 901 (Bankr.N.D.Ill.2005), which is analogous to the instant case. The court addressed whether a Texas franchise tax imposed on all corporations, foreign and domestic, for the privilege of doing business in the state was a nondischargeable excise tax "on a transaction." The court held that it was. It noted that an excise tax is often imposed with respect to a "discrete act" such as an individual sale. *Id.* at 911. However, it held that a "panoptic" interpretation of the statute was appropriate, given the legislative history that the term "transaction" was to be "broadly defined." *Id.* at 912. Recognizing that "business necessarily encompasses and requires a variety of transactions," it concluded that it was of no consequence "[t]hat the tax is not imposed

on a discrete, readily identifiable transaction." *Id.*

The Court agrees with the court in *National Steel,* and concludes that it is irrelevant that the Michigan SBT is not assessed exclusively with respect to any particular or identifiable transaction. For purposes of § 507(a)(8)(E), it is sufficient that the tax is imposed in connection with a series of transactions. Therefore, liability for the SBT is not dischargeable.

 This conclusion is consistent with the language of the statute and its legislative history. The starting point of any statutory analysis is the language of the statute. If the statutory language is unambiguous, the judicial inquiry must end, and the plain meaning of the text must be enforced. *Deutsche Bank Nat'l Trust Co. v. Tucker,* 621 F.3d 460, 462–63 (6th Cir. 2010). If the language is not clear, a court may resort to a review of legislative history. *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 549 (6th Cir.1999). In this case, the language of the statute does not reveal an unambiguous answer to the question whether the phrase "on a transaction" mandates that the tax be tied to a particular transaction. Therefore, resort to legislative history is permissible.

That history unambiguously demonstrates that Congress intended to cast a wide net in employing the term "transaction":

> [T]he legislative history indicates that Congress intended the term "transaction" to be defined broadly. The Joint Statement of the floor leaders, Senator

DeConcini and Representative Edwards, stated that: "[a]ll Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes." 124 Cong. Rec. 34,016 (Senate), reprinted in 1978 U.S.Code Cong. & Admin. News 6505, 6567; 124 Cong. Rec. 32,416 (House), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 6436, 6498 (emphasis added).

*In re Groetken,* 843 F.2d 1007, 1014 (7th Cir.1988). Consistent with the legislative history, courts have utilized an expansive definition of "transaction" in interpreting the statute:

> 1. The act or an instance of conducting business or other dealings. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons. 4. Civil law. An agreement that is intended by the parties to prevent or end a dispute and in which they make reciprocal concessions.

*National Steel Corp.,* 321 B.R. at 912 (quoting Black's Law Dictionary 1503 (7th ed. 1999)).[2]

In harmony with this view of the legislative history, and utilizing expansive definitions of the term "transaction," several courts have concluded that, for purposes of § 507(a)(8)(E), the term "transaction" covers a series of acts that, together, comprise general business activity, even if the tax is not imposed on any discrete event. *See In re Trism, Inc.,* 311 B.R.

---

**2.** Use of an expansive definition of "transaction" in the context of § 507(a)(8)(E) is consistent with the United States Supreme Court's interpretation of the term "transaction" in other contexts. *See, e.g., Schindler Elevator Corp. v. United States ex rel. Kirk,* —— U.S. ——, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011) (in interpreting "transaction" as

used in The False Claims Act, 31 U.S.C. § 3730(e)(4)(A), noting that it is "a term that courts have recognized as having a broad meaning"); *Moore v. New York Cotton Exch.,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926) (in interpreting former Equity Rule 30, noting that " '[t]ransaction' is a word of flexible meaning").

509, 517 (8th Cir. BAP 2004), *aff'd,* 126 Fed.Appx. 339 (8th Cir.2005) (defining "transaction" broadly to cover the operation of a heavy vehicle on the highways for more than 5,000 miles in a calendar year); *In re DeRoche,* 287 F.3d at 757 (defining "transaction" broadly to cover "the act of employing a worker without carrying the required insurance when the worker is injured"); *In re Bliemeister,* 296 F.3d 858, 863 (9th Cir.2002) (same); *In re Groetken,* 843 F.2d at 1013–14 (tax levied on the "privilege of retailing" is within the statute). Consistent with the legislative history and these authorities, the Court concludes that it is irrelevant that Michigan's SBT is not tied to a discrete transaction.

Quiroz argues that interpreting the statute in such a fashion would mean that all excise taxes could be viewed as being "based on a transaction," thus rendering the phrase "on a transaction" superfluous, and running afoul of a basic principle of statutory interpretation that statutory language should not be made nugatory. *See Lake Cumberland Trust, Inc. v. United States Envtl. Prot. Agency,* 954 F.2d 1218, 1222 (6th Cir.1992) (courts should make every effort to give effect to each word in a statute and avoid a construction that renders any provision superfluous). But Quiroz is wrong to assume that the phrase would serve no purpose even if all excise taxes could be deemed to be "based on a transaction." In fact, the purpose of the phrase appears to serve the Congressional goal of creating a cut-off for certain older or "stale" excise tax claims, so that only such older tax debts would be dischargeable. Under (E)(i), an excise tax is non-dischargeable if (a) the tax is on a transaction "occurring before the date of the filing of the petition," and (b) the tax is one for which a return is due within three years before the filing of the petition. Subparagraph (E)(ii) covers the case where no return is required, in which case an excise tax is non-dischargeable if it is on a transaction occurring during the three years preceding the filing of the petition. These provisions signal that demarcation will be determined by: (i) looking to a transaction associated with the tax and the filing date of a return, if a return was due, or (ii) looking solely to a transaction, if no return was due. Viewed in this light—that the purpose of the "on a transaction" language is to establish a means for distinguishing stale, dischargeable claims from those that are not—it is irrelevant that all excise taxes may be "based on a transaction." Because the phrase has meaning in its function as a temporal determinant of older, dischargeable tax claims, the Court's interpretation does not render the phrase superfluous.

The view that Congress was focused in this statute on the staleness of tax claims and the creation of specific demarcations for staleness is supported by the history leading up to the adoption of the Bankruptcy Code in 1978. Prior to 1966, all taxes were generally nondischargeable regardless of when incurred. *United States v. Sotelo,* 436 U.S. 268, 275, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978). With the adoption of the Bankruptcy Act, Pub.L. No. 89–496, 80 Stat. 270, in 1966, a temporal limitation was established, making dischargeable all tax claims (except for unpaid withholding taxes) that "became legally due and owing" more than three years before bankruptcy filing. *Sotelo,* 436 U.S. at 275–76, 98 S.Ct. 1795. With the adoption of the Bankruptcy Code in 1978, Congress refined the nondischargeability of tax claims by listing specific taxes that would qualify as nondischargeable and specific timeframes for demarcating dischargeability. As for timeframes, Congress abandoned the more general language of "legally due and owing" more than three years before bank-

ruptcy filing, replacing it with more operational language, such as when a return was due, when an assessment was made, or when the tax was last payable without penalty. The specific timeframe for excise taxes in § 507(a)(8)(E), set forth above, utilized the due date for returns and/or when a transaction occurred. Viewed in the evolutionary light of bankruptcy law, Congress's use of the term "transaction" is reasonably understood as a means of operationalizing the demarcation between older and relatively newer excise tax obligations, rather than a means of distinguishing between transaction-specific and transaction-nonspecific excise taxes.

This view of the statute makes sense because there does not appear to be any obvious reason why Congress would wish to distinguish between excise taxes that are traceable to a particular transaction and those that may be tied to an amalgam of transactions. Under Quiroz's view, Congress must have intended to make the former non-dischargeable and the latter dischargeable. But Quiroz offers no reason why Congress would have chosen to make such a distinction, and the Court cannot fathom one. ·

Indeed, adopting Quiroz's position would undermine a central Congressional concern that, as a general matter, priority be given to tax claims so that public revenues are not unduly diminished. *See In re Suburban Motor Freight, Inc.*, 998 F.2d 338 (6th Cir.1993) ("Undoubtedly, Congress provided priority for unpaid tax claims because of the public purpose of tax revenues; the workings of Government cannot await bankruptcy distribution alongside unsecured creditors, with the possibility, even the probability of receiving pennies on the dollar of what the taxpayer-debtor owed."). While the statute certainly does not grant priority to all tax claims, Quiroz's interpretation of this ambiguous statute diminishes public revenues based on a distinction without any tenable explanation of Congressional intent.

The untenability of Quiroz's view of the statute is also demonstrated by review of the statute's treatment of other taxes. With respect to all other taxes addressed in § 507(a)(8), the only distinction drawn, as to any particular tax, relates to a timeframe. For example, subparagraph (F), addressing customs duties, draws distinctions based on when the merchandise entered for consumption. Subparagraph (D), addressing employment taxes, draws distinctions based on when the compensation was earned. Subparagraph (B), addressing property taxes, draws a distinction based on when the tax was incurred and payable. In none of these provisions does Congress make a distinction based on a substantive feature of the tax. Under Quiroz's view, Congress decided to draw such a substantive distinction only as to excise taxes, making them non-dischargeable only if they were tied to a particular transaction. Given that such special substantive treatment is not evident with respect to any other tax that Congress addressed, the Court is unable to discern a Congressional intent to treat excise taxes not traceable to discrete transactions as dischargeable.

■ The Court is mindful that "priority claims must be carefully limited since every such claim reduces the fund available to general creditors," *In re Suburban Motor Freight, Inc.*, 36 F.3d 484, 487 (6th Cir.1994), and that "creditors of all stripes must directly tie their priority claims to specific provisions of the statute." *Suburban Motor Freight*, 998 F.2d at 342. This Court agrees that the seven priority provisions of § 507(a)(8) must be construed narrowly; however, they must also be construed correctly. A correct construction

requires rejection of Quiroz's interpretation.

It is unquestionable that the Michigan SBT is based on, at least, some transactions. While some components of the tax calculation, such as depreciation, might be viewed as untethered to a transaction, major features of the tax—such as costs of goods and labor and interest—are clearly transaction-based. Accordingly, the Court concludes that, under § 507(a)(8)(E), the SBT qualifies as a non-dischargeable excise tax associated with transactions, even if not tied to a particular transaction. Accordingly, the Bankruptcy Court correctly determined that any SBT owed by Quiroz was not discharged in bankruptcy pursuant to §§ 507(a)(8)(E) and 523(a)(1)(A).

## B. Principally Liable

■ Michigan law renders certain business-entity officials personally liable for the entity's failure to file tax returns or pay taxes that are due. *See* Mich. Comp. Laws § 205.27a(5). Quiroz acknowledges that, as a responsible corporate official, he is personally liable under Michigan law for IWC's failure to pay the SBT it owed. However, he claims that such obligation was discharged, even if IWC's SBT obligation is found to be a claim for an excise tax that would, as to IWC, be non-dischargeable.

His theory is that § 507(a)(8)(E) does not apply to render non-dischargeable debts for which the corporate individual is not principally liable—a theory that he attempts to support based on the structure of the Bankruptcy Code and the history of its adoption. Specifically, he points to § 507(a)(8)(C), which accords priority to (and thus excepts from discharge) "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." Quiroz notes that this is the sole provision under § 507(a)(8) that expressly makes a debtor liable when he is responsible for a tax "in whatever capacity." Invoking the principle that use of language in one section of a statute and its omission in another section leads to the presumption that the legislative distinction was intentional, *Dean v. United States,* 556 U.S. 568, 129 S.Ct. 1849, 1854, 173 L.Ed.2d 785 (2009), Quiroz concludes that Congress must have intended to prevent discharge of tax debts owed by secondarily liable debtors only under § 507(a)(8)(C). Because the SBT was not a tax that IWC was required to collect or withhold, its liability (if at all) is under § 507(a)(8)(E). Therefore, according to Quiroz, the derivative nature of his liability under Michigan law renders the debt dischargeable.

The Court disagrees. As stated earlier, the starting point of any statutory analysis is the language of the statute itself. *Tucker,* 621 F.3d at 462–63. If there is no ambiguity in the statute, there is no license to invoke interpretive principles, and the court must enforce the language as written. *Id.* In this case, there is nothing ambiguous about § 507(a)(8)(E). Under its plain meaning, a claim by a governmental unit for an excise tax that otherwise comports with the language of that provision is non-dischargeable. No words in that provision require any interpretation, and thus this Court is not at liberty to read into the statute a provision that non-dischargeability only applies where the debtor is principally liable for the debt.

Even if one were to look beyond the language of the statute, the legislative history explains how Congress came to use the language found uniquely in § 507(a)(8)(C). The phrase upon which Quiroz relies—"for which the debtor is liable in whatever capacity"—was enacted as a result of *Sotelo,* which interpreted the Bankruptcy Act, Pub.L. No. 89–496, 80 Stat. 270 (1966), the predecessor to the current Bankruptcy Code adopted in 1978.

In *Sotelo,* the Court held that a corporate president, who was personally responsible under the Internal Revenue Code for his company's failure to pay withholding taxes, could not have that debt discharged under the bankruptcy statute as it was then written. The Court stressed both the Congressional and U.S. Department of Treasury concern that corporate failures might leave significant revenues uncollected. *Id.* at 278, 98 S.Ct. 1795 (noting that allowing corporate officials to escape liability through discharge of debt for withholding taxes "would be directly inconsistent with Congress' declarations that the amendment which became § 17a(1)(e) met the Treasury Department's concern about ensuring post-bankruptcy liability for these taxes"). Because adoption of a new bankruptcy code was then being considered by Congress, the *Sotelo* decision was very much in the contemplation of the drafters in connection with withholding taxes. *See* 124 Cong. Rec. 34015 (1978) (Senator DeConcini) (discussing "trust fund" taxes and noting that the priority for the tax debt owed by a responsible officer will be the same as established under *Sotelo* ).

Yet nowhere in *Sotelo* or in the legislative history is there any discussion of Congress confining non-dischargeability of tax debts owed by a corporate officer to the withholding-tax context. Indeed, what is clear is that *Sotelo* highlighted a particular context—withholding taxes—in which corporate officer liability was significant. But there is no statement in the opinion or the legislative history surrounding the adoption of the Bankruptcy Code that suggests that the fairness and fiscal concerns applicable to withholding-tax debts would not also be present with respect to excise taxes or other taxes covered by § 507(a)(8). Quiroz has not offered, and the Court cannot discern, a reason why Congress would insist that corporate officers be subject to permanent liability for unpaid withholding taxes but escape liability through discharge for other equally significant taxes of their business entities.

While Quiroz offers no case authority in support of his theory, the Michigan Department of Treasury points to *In re Mueller,* 243 B.R. 346 (Bankr.W.D.Wis. 1999), a case that this Court finds persuasive. The debtor in *Mueller* was the sole shareholder of a corporate entity owing unpaid unemployment contributions to the State of Wisconsin, which, like Michigan, has a law rendering responsible corporate parties personally liable for the unpaid taxes of their corporation. The debtor did not dispute that he was the responsible party under the statute; rather, he argued, among other things, that any debt he owed on behalf of the corporate entity was discharged in bankruptcy. The debtor contended that none of the exceptions to discharge contained in § 507(a)(8) applied in his case because, according to him, §§ 507(a)(8) and 523(a) only apply to render non-dischargeable unpaid tax debts owed by a person or entity *originally* liable for the debt, as opposed to persons deemed liable secondarily by operation of a statute. The court rejected the debtor's argument for three reasons: absence of authority to support the debtor's position; absence of language in the statute to support his position; and inconsistency with the principle of *Sotelo* that "personal liability for taxes is liability for a tax." 243 B.R. at 350.

Quiroz is unsuccessful in undermining *Mueller.* Although Quiroz argues that *Mueller* is vulnerable because it relied on an inapposite case, *In re Voightman,* 239 B.R. 380 (8th Cir. BAP 1999), *Mueller's* discussion of that case related to the issue of whether unemployment taxes were excise taxes—not the dischargeability of corporate officer tax liability. Quiroz's attack on *Mueller* is further undermined because

444

other courts have followed it. *See In re McAdam*, 402 B.R. 473 (Bankr.D.N.H. 2009); *Dep't of Treasury v. Coller*, No. 244344, 2004 WL 435399 (Mich.Ct.App. Mar. 9, 2004). He points to no authority to the contrary, and the Court is aware of none.

The Court concludes that it is irrelevant under § 507(a)(8)(E) that Quiroz's liability is derivative of his company's liability. The Bankruptcy Court did not err in reaching the same conclusion.

## V. CONCLUSION

For the reasons stated above, the order of the Bankruptcy Court granting the Michigan Department of Treasury's motion to dismiss is affirmed.

SO ORDERED.