Filed 11/7/13  Hernandez v. Vasquez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROSA HERNANDEZ et al., | B244533 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC 474886) |
| v. | |
| MICHAEL VASQUEZ et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico and Conrad R. Aragon, Judges.  Affirmed in part; reversed in part.

The Dressler Law Group, Thomas W. Dressler; Law Offices of Dennis Hartmann and Dennis Hartmann for Plaintiffs and Appellants.

Gordon & Rees, Craig J. Mariam and Matthew G. Kleiner for Defendants and Respondents.

\* \* \* \* \* \*

Plaintiffs Rosa Hernandez, Alejandro Hernandez,[1] Richard Gutierrez, Frank Salazar, Paul and Elizabeth Royalty, and Alvin and Carol Tallman filed this action against Michael Vasquez and Shining Star Resorts, Inc. (Shining Star), for alleged violations of the Corporate Securities Law of 1968. (Corp. Code, § 25000 et seq.)[2] The trial court sustained a demurrer without leave to amend to two of causes of action on statute of limitations grounds. The court sustained the demurrer with leave to amend to a third cause of action. After plaintiffs filed a first amended complaint (FAC), the court sustained a demurrer without leave to amend to the remaining cause of action. The court based its order again on the statute of limitations.

Plaintiffs appeal from the judgment of dismissal entered after the demurrers. We conclude the causes of action for (1) sale of unqualified securities and (2) unlicensed sale of securities were, indeed, untimely. On the other hand, the demurrer to the cause of action for fraudulent sale of securities was improperly sustained, except as to Gutierrez. We therefore affirm in part and reverse in part.

**FACTS AND PROCEDURE**

For purpose of a demurrer, we assume the facts alleged in the complaint are true. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.) Plaintiffs' complaint alleged as follows. Vasquez presented to plaintiffs a "low risk" or "no risk" investment that was a "double your money deal." Vasquez promised plaintiffs a return of 90 percent of their money if the investment was "terminated" early. The investment he offered was an interest in the wealth to be generated by developing certain real property in Nevada into a golf course and surrounding homes. Vasquez offered plaintiffs two different investment contracts -- a purchase or receipt agreement and a promissory note. Vasquez represented himself as president of Shining Star, the entity that was offering the subject

---

[1]    The two Hernandez plaintiffs are brother and sister. We refer to them by their first names to avoid confusion. We do not intend this informality to reflect a lack of respect.

[2]    Further undesignated statutory references are to the Corporations Code.

investment. After meetings and sales pitches with Vasquez, the plaintiffs invested in Shining Star. The Tallmans paid $100,000 for a Shining Star receipt agreement in August 2006 and added $40,000 more to their investment in October 2006. The Royaltys paid $100,000 for a Shining Star purchase agreement in September 2006. Salazar paid $50,000 in October 2006 for a Shining Star purchase agreement. Alejandro paid $100,000 for a Shining Star promissory note in February 2007 and $50,000 for a Shining Star purchase agreement in March 2007. Gutierrez paid $100,000 for a Shining Star promissory note in February 2007. Rosa paid $50,000 for a Shining Star promissory note in April 2007.

In the spring of 2008, Vasquez requested that plaintiffs exchange their promissory notes and purchase or receipt agreements for shares in Shining Star. Gutierrez exchanged his promissory note and Alejandro and the Tallmans exchanged their purchase agreements for shares in May 2008. Plaintiffs alleged Salazar and the Royaltys exchanged their purchase agreements for shares in 2008, though they do not give a specific date, other than to say Vasquez requested they make those exchanges in the spring of 2008. In opposition to the demurrer, plaintiffs stated Salazar and the Royaltys exchanged their purchase agreements in "mid-2008." The complaint does not allege Rosa exchanged her promissory note for shares.

As it turned out, the investments offered by Vasquez and Shining Star were without basis. Shining Star never had an interest in the real property in Nevada and the development never proceeded. On May 28, 2009, Vasquez filed a bankruptcy petition under chapter 7 of the United States Bankruptcy Code. On August 21, 2009, the bankruptcy court granted Vasquez a discharge. On August 20, 2009, Gutierrez and his wife Patricia filed a complaint for nondischargeability against Vasquez in the bankruptcy court. With some exceptions, a discharge under chapter 7 of the Bankruptcy Code "discharges the debtor from all debts that arose before the date of the order for relief." (11 U.S.C. § 727(b).) Plaintiffs alleged the discharge had "the effect of a permanent injunction prohibiting the filing or prosecution of this lawsuit."

3

On October 21, 2011, the bankruptcy court approved a stipulation between the Gutierrezes and Vasquez authorizing the instant lawsuit against Vasquez and modifying the discharge injunction to permit the filing and prosecution of this lawsuit (bankruptcy stipulation).[3] Specifically, the bankruptcy stipulation stated the plaintiffs in this lawsuit "shall have the right to commence litigation against the Debtor [Vasquez] in a non-bankruptcy forum on any claims arising from or related to the Debtor's pre-petition offers or sales of securities." The discharge was "waived to permit the prosecution of any such claims" and was "further waived to the extent necessary to permit [the plaintiffs] to recover on their claims, whether or not reduced to judgment, from the proceeds of any applicable insurance policy." But the discharge stay "continue[d] in full force and effect as to any attempt to enforce any liability as a personal obligation of the Debtor or to enforce any liability from or against any property of Debtor or his Estate other than insurance policies or proceeds." The stipulation dismissed the Gutierrezes' action to determine dischargeability without prejudice, except if they recovered from applicable insurance proceeds, in which case their action was to be dismissed with prejudice. They agreed not to re-file any action to determine dischargeability unless and until they failed to secure a recovery from insurance proceeds. The bankruptcy court reserved jurisdiction of any action to determine the dischargeability of Vasquez's debts.

Plaintiffs filed the instant lawsuit on December 8, 2011, and alleged causes of action against Vasquez and Shining Star for sale of unqualified securities, fraudulent sale of securities, and unlicensed sale of securities under the Corporations Code. Vasquez and Shining Star demurred to the complaint on the ground that the applicable statutes of limitations barred all three causes of action. The court sustained the demurrer without leave to amend on the causes of action for sale of unqualified securities and unlicensed sale of securities. The court concluded theses causes of action were time-barred under Corporations Code section 25507 and Code of Civil Procedure section 338, and

---

[3] The bankruptcy stipulation is exhibit A to the complaint.

moreover, the bankruptcy discharge injunction did not affect the running of the statute of limitations. The court further sustained the demurrer with leave to amend on the cause of action for fraudulent sale of securities. It concluded this cause of action was time-barred under Corporations Code section 25506, but gave plaintiffs leave to allege new facts showing they were not on inquiry notice when Vasquez filed his bankruptcy petition.

Plaintiffs filed their FAC re-alleging the sole remaining cause of action for fraudulent sale of securities. They alleged they received notice of Vasquez's bankruptcy petition but:

> "[n]either the notice nor anything in the bankruptcy court files indicated that Mr. Vasquez had been guilty of securities fraud, or that insurance existed that might cover Plaintiffs' losses. The Plaintiffs (except for Richard and Patricia Gutierrez) had no notice or knowledge prior to August 2011 that the sales of securities to them had been accomplished through the use of untrue statements, or failures to disclose material facts. The Plaintiffs (except for Richard and Patricia Gutierrez) had no notice or knowledge of the existence of any insurance potentially applicable to their claims prior to August 2011. The Gutierrezes filed a complaint in the Bankruptcy Court in August 2009 seeking to determine (a) that defendant was indebted to them; and (b) to determine the dischargeability of any debts found to be owing them. The Gutierrezes learned through discovery in their bankruptcy adversary proceeding that Defendant had committed securities fraud and that there was a possibility of insurance. The Gutierrezes gained that knowledge and [*sic*] various times in 2010. Commencing in August 2011, the Gutierrezes learned the identity of the other Plaintiffs herein and communicated to them the possibility of a claim for securities fraud and the possible existence of insurance. After retaining counsel and conducting appropriate investigation, this action was filed."[4]

Vasquez and Shining Star again filed a demurrer. In support of their demurrer, they requested judicial notice of the Gutierrezes' complaint for nondischargeability filed on August 20, 2009, in the bankruptcy court. Among other things, the Gutierrezes'

---

[4]     Although the above-quoted portion of the FAC refers to both Richard and Patricia Gutierrez as "plaintiffs," only Richard was designated a plaintiff in the instant action, as distinct from the proceedings in the bankruptcy court.

complaint alleged Vasquez's debt to them was nondischargeable because it was incurred through fraud (11 U.S.C. § 523(a)(2)). They alleged Vasquez's representations were untrue in that he had no way of knowing whether they would double their money and he did not disclose the risks involved, including that he needed to make a nonrefundable payment of $600,000 for an option to purchase the property in question.

The court granted the request for judicial notice and sustained the demurrer to the FAC without leave to amend. It held plaintiffs' cause of action was time-barred under the two-year statute of limitations provided for in section 25506. The court found Vasquez's bankruptcy filing put plaintiffs on inquiry notice that Vasquez's representations the investments were "no risk," would double plaintiffs' money, and the development project was financially healthy were false. It held the new allegations in the FAC only indicated plaintiffs were not on actual notice of securities fraud upon receiving notice of the bankruptcy filing, but the allegations "d[id] not alter the fact that [they] were on inquiry notice." The court entered a judgment of dismissal for Vasquez and Shining Star. Plaintiffs filed a timely notice of appeal.

## STANDARD OF REVIEW

We review the complaint de novo to determine whether it states facts sufficient to constitute a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) We do not accept the allegations of the complaint as true if they are contradicted by matters judicially noticeable. (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210.)

When the court sustains the demurrer without leave to amend, we determine whether there is a reasonable possibility the plaintiff can cure the defect by amendment. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) If the plaintiff can cure the defect, the trial court has abused its discretion and we reverse. (*Ibid.*) If not, there has been no abuse of discretion and we affirm. (*Ibid.*)

6

## DISCUSSION

### 1. *The Cause of Action for Sale of Unqualified Securities Was Untimely*

Vasquez and Shining Star contend the cause of action for sale of unqualified securities was barred by the two-year statute of limitations provided by section 25507. We agree.

"Sections 25110, 25120 and 25130 make it unlawful to offer or sell any security without qualifying the security or transaction, unless it is exempt under" other sections of the code. (*Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 711.) The pertinent cause of action alleged violations under these sections. The plaintiffs brought the cause of action pursuant to section 25503, which imposes liability for violating sections 25110, 25120, and 25130 and authorizes plaintiffs to seek return of the consideration paid for the securities. (§ 25503; *Bowden v. Robinson, supra*, at p. 711.)

Section 25507 provides the statute of limitations for actions under section 25503. It provides: "No action shall be maintained to enforce any liability created under Section 25503 . . . unless brought before the expiration of two years after the violation upon which it is based or the expiration of one year after the discovery by the plaintiff of the facts constituting such violation, whichever shall first expire." (§ 25507, subd. (a).) As the plain language of the statute demonstrates, the statute of limitations for sale of unqualified securities shall be no longer than two years. (Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2013) ¶ 5:380, p. 5-136 (rev. # 1, 2012) ["A relatively short statute of limitations applies to actions for qualification violations: Any such action must be commenced within *1 year* after *discovery* of the facts constituting the violation, and in no event later than *2 years* after such violation."].)

Here, the pertinent cause of action alleged all of the investments offered in Shining Star were securities within the meaning of the California Corporate Securities Law of 1968 (§ 25000 et seq.). The sale of these alleged unqualified securities occurred from August 2006 to April 2007, when the complaint alleged the plaintiffs purchased their interests in the Shining Star project. The two-year statute of limitations for all plaintiffs expired by April 2009. Their cause of action was therefore time barred even before

Vasquez filed for bankruptcy in May 2009 and long before they filed their complaint, which was on December 8, 2011.

Even if we assume the exchange by some plaintiffs of their original investment contracts constituted a new "sale" for which Vasquez and Shining Star could be liable, the cause of action was time barred. The plaintiffs exchanged their original investment contracts for shares in either April 2008, May 2008, or some other time in "mid-2008."[5] The statute of limitations expired for every plaintiff by mid-2010, well before they filed the complaint. As against Shining Star, this cause of action was clearly untimely.

Still, as against Vasquez, plaintiffs argue the cause of action is timely because the statute commenced running in 2008 (when the exchange for Shining Star shares occurred) and tolling for bankruptcy stays factored in.[6] We are not persuaded.

Code of Civil Procedure section 356 provides "[w]hen the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." This section thus tolls the statute of limitations when an injunction or statutory prohibition is in effect. A bankruptcy stay may constitute a statutory prohibition -- that is, a tolling event -- under Code of Civil Procedure section 356. (*Schumacher v. Worcester* (1997) 55 Cal.App.4th 376, 380.)

Such is the case with an automatic stay under title 11 United States Code section 362. When a debtor files a petition for bankruptcy, an automatic stay comes into effect. (11 U.S.C. § 362.) The automatic stay prevents "the commencement or continuation . . .

---

[5] We will hold plaintiffs to the statement in their opposition below that the Royaltys and Salazar exchanged their original investment contracts in mid-2008. On review, we "may, and shall, take judicial notice of admissions in plaintiff's opposition to the demurrer. (Evid. Code, § 452, subd. (d).)" (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518.)

[6] Plaintiffs have not argued on appeal that protection under the bankruptcy stays should extend to Shining Star.

8

of a judicial, administrative, or other action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of" the bankruptcy case. (§ 362, subd. (a)(1).) The automatic stay terminates when the debtor obtains a discharge. (*Id.*, subd. (c)(2)(C).) Vasquez filed for bankruptcy on May 28, 2009. According to the complaint, the bankruptcy court granted him a discharge on August 21, 2009, but according to the bankruptcy court docket, which Vasquez and Shining Star submitted with a request for judicial notice, the court granted the discharge on September 22, 2009. Using the September date for the discharge, the automatic stay was in effect and tolled the statute of limitations for 117 days, or nearly four months. Even if one adds four months to mid-2010 -- the latest possible expiration date for the statute of limitations without any tolling -- the cause of action was untimely filed in December 2011.

Plaintiffs contend an even longer tolling period applied due to the so-called "discharge injunction" under title 11 United States Code section 524, which they contend is identical to the automatic stay statute (11 U.S.C. § 362). This is not an accurate reading and application of the discharge injunction statute. Title 11 United States Code section 524 enjoins creditors from collecting on debts after a discharge in a bankruptcy proceeding. (*In re Beeney* (Bankr. 9th Cir. 1992) 142 B.R. 360, 362.) Section 524 states a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor* . . . ." (11 U.S.C. § 524(a)(2), italics added.) Except in circumstances not relevant here, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." (*Id.* § 524(e).) Section 524 "makes clear that this injunction applies only to the debtor's personal liability and does not inhibit collection efforts against other entities." (*In re Beeney*, *supra*, at p. 362.) Accordingly, the discharge injunction does not enjoin a suit against a debtor when "the purpose of the action is to collect from a collateral source, such as insurance . . . and the plaintiff makes it clear that it is not naming the debtor as a party for anything other than formal reasons . . . ." (*In re Munoz* (Bankr. 9th Cir. 2002)

9

287 B.R. 546, 550; see *Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 781 ["Since section 524(a)[] voids only those judgments determining the debtor to be *personally* liable, '. . . the statutory language, on its face, does not preclude the determination of the debtor's liability upon which the damages would be owed by another party, such as the debtor's liability insurer.'"].)

Because the discharge injunction "permits an action against a discharged debtor to fix the liability of the debtor's insurers" (*Forsyth v. Jones, supra*, 57 Cal.App.4th at p. 782; *In re Beeney, supra*, 142 B.R. at pp. 362-363), it was not a "statutory prohibition" against this lawsuit and therefore not a tolling event under Code of Civil Procedure section 356. The bankruptcy stipulation attached to the complaint states plaintiffs are pursuing this action to recover "from the proceeds of any applicable insurance policy" and not "to enforce any liability as a personal obligation of" Vasquez. While the stipulation expressly conveys plaintiffs' intention to fix the liability of Vasquez's insurers, the stipulation was unnecessary for plaintiffs to proceed in this manner. The stipulation merely reiterates what title 11 United States Code section 524 already states. Indeed, to the extent it purported to alter the terms of the discharge injunction, it could not have lawfully done so. Section 524 definitively sets forth the terms of the discharge injunction, and they are not capable of modification by a court. (*In re Munoz, supra*, 287 B.R. at p. 553.) The stipulation was, in effect, an idle act. Plaintiffs' contention that they could not have commenced this action until after the stipulation allowed it is wrong.

Moreover, their contention that the discharge injunction is identical to the automatic stay, which temporarily enjoined this lawsuit, is wrong. The language of the discharge injunction statute differs from the automatic stay statute in material respects. The provisions of the automatic stay enjoin actions "against the debtor," as opposed to the more narrow provisions of the discharge injunction, which enjoin actions only for "a personal liability of the debtor." (11 U.S.C. §§ 362(a)(1), 524(a)(2); *In re Munoz, supra*, 287 B.R. at p. 554, fn. 8 ["It warrants clarification and emphasis that the § 362 automatic stay is broader than the discharge injunction (because § 362 does not contain such limiting concepts as 'personal liability of the debtor') . . . ."].) The provisions of the

10

automatic stay also fail to state that the stay "does not affect the liability of any other entity" for the debtor's debt, as the discharge injunction so states. (11 U.S.C. § 524(e).) The presence of these limiting concepts in the discharge injunction make all the difference. They are exactly what take lawsuits like this -- those initiated simply to fix the liability of the debtor's insurer -- outside the scope of the discharge injunction.

In short, plaintiffs' cause of action for sale of unqualified securities was time barred. This deficiency is not curable by amendment. The court did not err in sustaining the demurrer to this cause of action without leave to amend.

## 2. *The Cause of Action for Unlicensed Sale of Securities Was Also Untimely*

Section 25501.5 creates a cause of action to rescind a purchase of securities when the broker-dealer who sold the securities was unlicensed at the time of the purchase. (§ 25501.5, subd. (a)(1).) The parties agreed below that the three-year statute of limitations for "[a]n action upon a liability created by statute" applied to this cause of action. (Code Civ. Proc., § 338, subd. (a).)

For the sake of argument, we will again assume the 2008 transactions constituted an unlicensed "sale." This cause of action was time barred, even using this later date rather than the original purchase dates for the investment contracts in 2006 and 2007. As against Shining Star, the three-year statute of limitations expired in mid-2011 without any tolling. When one adds approximately four months for the tolling attributable to the automatic bankruptcy stay, the statute of limitations expired around October 2011 as against Vasquez. And as we have explained in part 1 of the Discussion, the discharge injunction did not contribute additional tolling. Accordingly, the December 2011 complaint was untimely as to this cause of action.

## 3. *Vasquez and Shining Star Failed to Establish the Securities Fraud Cause of Action Was Untimely, Except as to Gutierrez*

Section 25401 makes it unlawful for a person to offer or sell a security by means of a false statement of material fact or omission of material fact. Section 25501 creates a cause of action for violating section 25401. The statute of limitations for this cause of action expires on the earlier of: (1) "five years after the act or transaction constituting the

11

violation," or (2) "two years after the discovery by the plaintiff of the facts constituting the violation." (§ 25506, subd. (b).) Actual notice of the facts will trigger the statute, but inquiry notice is also sufficient. (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 423 (*Deveny*.)

Vasquez and Shining Star carried the burden of proving the statute of limitations barred this cause of action. (*Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298, 1310.) They argue the two-year statute of limitations applied and commenced running when plaintiffs received notice of Vasquez's bankruptcy petition. They contend the bankruptcy petition put plaintiffs on inquiry notice of their cause of action for securities fraud. The trial court agreed with Vasquez and Shining Star. It determined the cause of action was untimely because plaintiffs filed the complaint more than two years after May 28, 2009 (the date Vasquez filed for bankruptcy).

Under the circumstances of this case, inquiry notice was not an appropriate ground on which to sustain the demurrer. "Inquiry notice arises in a securities action when circumstances suggest to an investor of ordinary intelligence the possibility that he has been defrauded." (*Deveny, supra*, 139 Cal.App.4th at p. 428.) Inquiry notice is "'often called "storm warnings" in the securities context.'" (*Ibid.*) "Storm warnings may be found whenever there are '"any financial, legal, or other data, such as public disclosures in the media about the financial condition of the corporation"' that would tend to alert a reasonable person to the likelihood of fraud." (*Ibid.*) "[O]nce placed on inquiry notice by storm warnings, an investor must perform a reasonable investigation into the possibility of fraud. [Citation.] An investor who fails to fulfill this duty of inquiry will be charged with the knowledge of what an investor in the exercise of reasonable diligence would have discovered concerning the fraud, and this knowledge is imputed as of the date a diligent investigation would have turned up evidence sufficient to establish a cause of action." (*Ibid.*) "[W]hen the facts are susceptible to opposing inferences, whether 'a party has notice of "circumstances sufficient to put a prudent man upon inquiry as to a particular fact," and whether "by prosecuting such inquiry, he might have learned such fact" (Civ. Code, § 19), are themselves questions of fact to be determined by the jury or

12

the trial court.'" (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 440.) Additionally, whether plaintiffs have exercised reasonable diligence in their inquiry ""'"is a question of fact for the court or jury to decide."'"" (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 833.)

In brief, inquiry notice is replete with questions of fact and is generally an issue for ultimate determination by the trier of fact. Indeed, these principles are illustrated by *Deveny*, the very case Vasquez and Shining Star cite for the proposition that inquiry notice is sufficient to commence the limitations period. In *Deveny*, the plaintiffs brought a securities fraud cause of action under the Corporations Code, and the trial court granted the defendants' summary judgment motion on statute of limitations grounds. (*Deveny, supra*, 139 Cal.App.4th at p. 419.) While the Court of Appeal held inquiry notice was sufficient to trigger the statute of limitations, it reversed the judgment because the defendants' evidence did not demonstrate the plaintiffs had inquiry notice as a matter of law. Rather, the evidence presented a disputed issue of material fact precluding summary judgment. (*Id.* at p. 430.)

This is not to say that inquiry notice may never be established as a matter of law. It may be, such as when the underlying facts are undisputed and subject to only one reasonable inference. (E.g., *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 ["While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper."].) We are not persuaded this is one of those cases, however. Vasquez and Shining Star assert the issue may be decided in their favor as a matter of law, citing *Helfand v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 869, 898-899 (*Helfand*), and *In re Gregory* (9th Cir. 1983) 705 F.2d 1118, 1123 (*Gregory*).[7] Neither case assists them.

---

[7]     These are the same cases on which the trial court relied in its ruling.

13

*Gregory* was an appeal from a bankruptcy court judgment in which an unsecured creditor was dissatisfied because the debtor's confirmed plan provided for zero payment on the creditor's claim. (*Gregory*, *supra*, 705 F.2d at p. 1119.) The creditor contended the notice sent to creditors prior to the plan confirmation hearing did not meet constitutional due process standards because the notice did not contain a copy of the proposed plan, and the portion of the notice describing how the plan would deal with the creditor's claim was ambiguous. (*Id.* at p. 1122.) The court held the notice was not "constitutionally inadequate." (*Id.* at p. 1123.) The notice gave the creditor enough information that it could have obtained a copy of the plan to determine precisely how the plan proposed to deal with the creditor's claim. (*Ibid.*) In this context, the court explained: "When the holder of a large, unsecured claim . . . receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it.'" (*Ibid.*) The court's holding relating to due process standards and the rights of creditors is of no moment in this case. *Gregory* had nothing to do with inquiry notice as it relates to the statute of limitations, and it certainly did not hold notice of a bankruptcy proceeding puts creditors on inquiry notice *as a matter of law* of all fraud causes of action against the debtor.

*Helfand* cited to *Gregory*. The pertinent question in *Helfand* was whether a particular notice of motion was sufficient to alert certain individuals that "their personal interests were at stake" in the motion and they should, therefore, attend the hearing on the motion. (*Helfand, supra*, 10 Cal.App.4th at p. 898.) The question was part of an overarching analysis to determine whether the privies of these individuals were barred from litigating matters by the doctrine of res judicata. (*Id.* at p. 897.) After examining and quoting from *Gregory*, among other authorities, the court held the notice of motion was insufficient to notify the individuals their personal interests were at stake. (*Id.* at pp.

14

898-900.) The circumstances of this case and its holding are far removed from the issues here.

At this stage of the proceedings, and on the facts alleged in the complaint, we may not decide inquiry notice as a matter of law. The determination requires the resolution of questions of fact. For example, was the bankruptcy notice a sufficient storm warning to alert a reasonable person to the likelihood of fraud? What did plaintiffs do to investigate this storm warning, if anything? What would a reasonable person have done to investigate? When would a reasonable person, exercising reasonable diligence in his or her investigation, have discovered the alleged fraud?

Whereas the demurrer could not be sustained on inquiry notice grounds, actual notice is a different matter. Judicially noticed material demonstrated at least Gutierrez had actual notice of Vasquez's alleged fraud by August 2009. The Gutierrezes' complaint for nondischargeability filed on August 20, 2009, in the bankruptcy court alleged Vasquez's debt to them was not dischargeable because the debt was incurred through fraud. Thus, by August 20, 2009, Gutierrez knew the facts constituting his fraud cause of action, and the statute of limitations commenced running. The automatic stay was in effect from August 20 until the discharge on September 22, 2009, tolling the statute of limitations for 33 days. With 33 days of tolling, the two-year statute of limitations expired on September 22, 2011. Gutierrez's cause of action for securities fraud was untimely.

There is no indication in the pleadings the other plaintiffs had actual notice around the same time as Gutierrez. According to the FAC, Gutierrez did not contact the other plaintiffs and "communicate[] to them the possibility of a claim for securities fraud" until August 2011. Plaintiffs filed the complaint in a timely manner four months later.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The trial court shall vacate its order sustaining the demurrer to the FAC for fraudulent sale of securities and enter a new order sustaining the demurrer as to Gutierrez's fraud cause of action but overruling the demurrer as to the remaining plaintiffs' fraud cause of action. The order sustaining

15

the demurrer to the causes of action for sale of unqualified securities and unlicensed sale of securities shall stand.  Each party to bear their own costs on appeal.


                                        FLIER, J.

WE CONCUR:


        BIGELOW, P. J.


        GRIMES, J.

16